STATE OF NORTH CAROLINA v. JERROLD LEE BROWN

No. COA06-744

(Filed 20 March 2007)

**1. Firearms and Other Weapons— possession of stolen firearm—reasonable grounds to believe property stolen—sufficiency of evidence**

The trial court erred by denying defendant's motion to dismiss the charge of possession of a stolen firearm, because: (1) although there was evidence that defendant always slept with a gun in the bed with him at night, there was no evidence regarding the particular gun; (2) although a witness testified that defendant asked her to tell the officers a story about finding the bag of guns near the apartment building, defendant's testimony regarding these events was the exact opposite, (3) there was no testimony or evidence tending to show that defendant had any knowledge about where the guns came from, much less that one of the eight guns in the apartment was stolen; (4) no evidence was presented to give an inference that defendant should have had reason to believe that one of the guns was stolen; and (5) the State's evidence failed to do more than raise a suspicion or conjecture that defendant knew or had reason to know that one of the firearms was in fact stolen.

**2. Drugs— manufacturing marijuana—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of manufacturing marijuana, because: (1) evidence consisting of the presence of a controlled substance, when combined with that of packaging materials such as plastic bags, large amounts of currency, and scales, is sufficient to support a charge of manufacturing marijuana under N.C.G.S. § 90-95(a)(1); (2) the evidence revealed that when arrested defendant had in his pants pocket a plastic bag containing marijuana which was the same or similar to the plastic bags found in the apartment, and a witness testified that defendant resided in the apartment with her

and that she had previously seen defendant near a blue bowl, plastic bags and scales, and that he had been bagging up marijuana; and (3) although defendant's testimony and the testimony of another female contradicted the witness's testimony, it was for the jury to resolve the discrepancies and to determine the credibility of a witness's testimony.

**3. Criminal Law— prosecutor's argument—defense counsel's role**

The trial court did not abuse its discretion in a possession of a stolen firearm, forgery, possession of marijuana, and manufacturing marijuana case by overruling defendant's objection to remarks made by the prosecutor during her closing argument that the defense's job was to defend and not to explain, not to be even, and not to be fair, because: (1) the prosecutor neither used abusive, vituperative, and opprobrious language, nor did her comments amount to an offensive personal reference about defense counsel; (2) the prosecutor's statements attempted to explain the role of defense counsel, but did not amount to an attack upon her; (3) when considered within the context of the prosecutor's entire closing argument, the statements do not amount to a violation of N.C.G.S. § 15A-1230 or defendant's due process rights; and (4) defendant failed to show how the statements prejudiced him and resulted in a jury verdict which would not have been reached absent the statements.

Appeal by defendant from judgments entered 2 December 2005 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 25 January 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Mary S. Mercer, for the State.*

*Paul F. Herzog, for defendant-appellant.*

JACKSON, Judge.

On 4 September 2003, officers with the Crime Abatement Team of the Greensboro Police Department went to the Summit Station Apartments in Greensboro, North Carolina, in search of a female suspect who was wanted in connection with a robbery which had occurred the previous day. As the officers arrived at the apartment, they spotted the suspect standing on the ground floor engaging in an apparent drug sale with Sophia Dunlap ("Dunlap"). As soon as the

women realized the men approaching them were police officers, they ran up the apartment building stairs and subsequently threw an item over the balcony. Dunlap ran up the stairs and into Apartment H, where she slammed the door leaving the suspect outside. The officers retrieved the object the suspect had thrown, determined that it was a package containing cocaine, and placed the suspect under arrest.

The officers then proceeded to knock on the door of Apartment H into which Dunlap had disappeared. Dunlap opened the door and stepped outside, where she was immediately placed into custody and arrested for possession of cocaine. The officers noticed a strong odor of marijuana coming from inside the apartment. Believing this to indicate that other individuals likely were inside, the officers ordered anyone in the apartment to come out. Subsequently, Jerrold Lee Brown ("defendant") exited the apartment's only bedroom. The officers searched defendant's person and found a bag containing marijuana and a large sum of cash. Defendant was then placed under arrest for possession of marijuana.

The officers obtained a search warrant for the apartment, and during the search they located and seized the following items: several digital scales found in the kitchen, inside the kitchen cabinets, and from under the bed; a Hi-Point 9 millimeter pistol under the cushion of the only chair in the living room; a plastic bag containing rice and heroin from inside the bedroom night stand; mail addressed to Dunlap and a money order receipt showing that Dunlap sent money to defendant while he was in New York; a marijuana blunt; a blue mixing bowl with marijuana residue, hand scales, plastic bags, and a .380 semi-automatic pistol from under the bed; a Colt .38 Special firearm from under the mattress; a large bundle of counterfeit currency from the bathroom cabinet; and six handguns, ammunition, and pistol magazines in a blue nylon bag from the bedroom closet. During defendant's trial, one of the handguns found in the blue bag, a Sturm Ruger, Model P90 .45 caliber semi-automatic pistol, was shown to have been stolen.

On 15 March 2004, indictments were filed charging defendant with the following offenses: possession of a stolen firearm; maintaining a dwelling for the keeping and selling of controlled substances; possession with the intent to sell and deliver heroin; forgery; possession with the intent to sell and deliver marijuana; manufacturing marijuana; and possession of marijuana. At trial, Dunlap testified that she met defendant in July of 2003, and that they moved in together at the

STATE v. BROWN

[182 N.C. App. 277 (2007)]

end of that month. She stated that she and defendant lived together in Apartment H, and that he paid the monthly rent. According to Dunlap, defendant was still living in the apartment and paying rent at the time of their arrest. Dunlap testified that she was charged with the same offenses as defendant and had pleaded guilty.

With regards to the blue nylon bag containing six guns, Dunlap stated that she and defendant fabricated a story to tell the officers how the guns came to be in their possession. She stated that defendant told her to tell the officers that they found the bag outside the apartment building after seeing a man run down the street and throw the bag into the tall grass. Dunlap testified that at the time she did not know to what bag defendant was referring, and that defendant then told her about the guns in the bag. With regards to the drugs and other items seized, Dunlap testified that she previously had seen defendant with the blue bowl, plastic bags and scales, and that at the time he had been bagging up marijuana.

Defendant, who testified on his own behalf, stated that at no time did he date Dunlap or live in Apartment H with her. He testified that in 2003 he lived with his girlfriend, Theresa Brown ("Brown"), who is also the mother of his child. Brown's own testimony supported defendant's statement regarding his residence. Defendant stated that the only reasons he ever went to Dunlap's apartment were to buy and smoke marijuana, and to sell her various items including clothing. He also testified that Dunlap was the one who came up with the story about finding the blue nylon bag. Defendant stated that he knew there were guns in Dunlap's apartment, but did not know any of them were stolen.

On 2 December 2005, the jury convicted defendant of possession of a stolen firearm, forgery, possession of marijuana, and manufacturing marijuana, and acquitted him of the remaining offenses. Defendant was sentenced to a prison term of eight to ten months for his conviction for possession of a stolen firearm. For the remaining convictions he was given a sentence of fifteen to eighteen months imprisonment, to run consecutively to his sentence for the possession of a stolen firearm conviction. Defendant appeals from his convictions.

[1] Defendant first contends the trial court erred in denying his motion to dismiss the charge of possession of a stolen firearm, in that the State failed to present evidence sufficient to support his conviction. Specifically, defendant contends the State failed to present sub-

stantial evidence that he knew or had reasonable grounds to believe the property was stolen.

"In ruling on a defendant's motion to dismiss, the trial court must determine whether the State has presented substantial evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator." *State v. Boyd,* 177 N.C. App. 165, 175, 628 S.E.2d 796, 804 (2006) (citing *State v. Robinson,* 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied,* 537 U.S. 1006, 154 L. Ed. 2d 404 (2002)). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Matias,* 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001)). "When considering a motion to dismiss, the trial court must view all of the evidence presented 'in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor.' " *Id.* (quoting *State v. Rose,* 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied,* 515 U.S. 1135, 132 L. Ed. 2d 818 (1995)). "[H]owever, if the evidence 'is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed[.]' " *State v. Grooms,* 353 N.C. 50, 79, 540 S.E.2d 713, 731 (2000), *cert. denied,* 534 U.S. 838, 151 L. Ed. 2d 54 (2001) (citation omitted).

Contradictions and discrepancies in the testimony or evidence are for the jury to resolve and will not warrant dismissal. *State v. King,* 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996). Moreover, determinations of the credibility of witnesses are issues for the jury to resolve, and they do not fall within the role of the trial court or the appellate courts. *See State v. Hyatt,* 355 N.C. 642, 666, 566 S.E.2d 61, 77 (2002) ("[I]t is the province of the jury, not the court, to assess and determine witness credibility."), *cert. denied,* 537 U.S. 1133, 154 L. Ed. 2d 823 (2003). When a trial court is considering a defendant's motion to dismiss based upon an insufficiency of the evidence presented, the trial court "is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight." *State v. Powell,* 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

For a defendant to be found guilty of possession of a stolen firearm, the State must present substantial evidence that (1) the defendant was in possession of a firearm; (2) which had been stolen; (3) the defendant knew or had reasonable grounds to believe the property was stolen; and (4) the defendant possessed the pistol with a dishonest purpose. *See* N.C. Gen. Stat. § 14-71.1 (2003); *State v.*

*Taylor,* 311 N.C. 380, 385, 317 S.E.2d 369, 372 (1984). On appeal, defendant contests only the element regarding whether he knew or had reasonable grounds to believe the firearm was stolen.

The evidence presented at trial indicated that defendant always slept with a gun in the bed with him at night, however there was no evidence regarding the gun with which defendant slept. Dunlap testified that defendant asked her to tell the officers a story about finding the bag of guns after a man threw it into the area near the apartment building; however defendant's testimony regarding these events was the exact opposite. There was no testimony or evidence which tended to show that defendant had any knowledge about from where the guns came, much less that one of the eight guns in the apartment was stolen. Moreover, no evidence was presented from which one could infer that defendant should have had reason to believe that one of the guns was stolen.

Without more, we hold the State's evidence failed "to do more than raise a suspicion or conjecture" that defendant knew or had reason to know that one of the firearms was in fact stolen. Therefore, we hold the State failed to present sufficient evidence that defendant knew or had reason to believe that the Sturm Ruger semiautomatic pistol found in the blue nylon bag was stolen. As such, defendant's motion to dismiss the charge of possession of a stolen firearm should have been granted. Defendant's conviction for this offense thus is vacated.

[2] Next, defendant argues the trial court erred in denying his motion to dismiss the charge of manufacturing marijuana, in that the State failed to present evidence sufficient to support his conviction. Specifically, defendant contends there was insufficient evidence presented showing he manufactured the marijuana by repackaging it. Defendant alleges he merely was found in the apartment and no more.

Our courts have held that evidence consisting of the presence of a controlled substance, when combined with that of packaging materials such as plastic bags, large amounts of currency, and scales, is sufficient to support a charge of manufacturing marijuana pursuant to North Carolina General Statutes, section 90-95(a)(1). *See State v. Perry,* 316 N.C. 87, 99, 340 S.E.2d 450, 457-58 (1986); *State v. Jones,* 97 N.C. App. 189, 202, 388 S.E.2d 213, 220 (1990). The term "manufacture," as defined in the statute, includes the packaging and repackaging of the controlled substance. N.C. Gen. Stat. § 90-87(15) (2003).

**STATE v. BROWN**

[182 N.C. App. 277 (2007)]

The evidence presented at trial showed that when arrested, defendant had in his pants pocket a plastic bag containing marijuana which was the same or similar to the plastic bags found in the apartment. Moreover, Dunlap testified that defendant resided in the apartment with her, and that she previously had seen defendant near the blue bowl, plastic bags and scales, and that he had been bagging up marijuana. While defendant's testimony, and that of Brown contradicted Dunlap's testimony, it was for the jury to resolve the discrepancies and to determine the credibility of a witness' testimony. Thus, as there was substantial evidence presented indicating that defendant manufactured marijuana by packaging it, the trial court acted properly in denying defendant's motion to dismiss the charge of manufacturing marijuana.

[3] Finally, defendant contends the trial court erred in overruling defendant's objection to remarks made by the prosecutor during her closing argument. During her closing argument, prosecutor Stephanie Reese stated "Ms. Bailey and the defense's job is to defend. Not to explain, not to be even, not to be fair. Her job is to defend." Defendant contends this statement constituted an improper attack on defense counsel Sabrina Bailey's character and integrity, and that the trial court should have instructed the jury to disregard the prosecutor's statement.

On appeal, "[t]he standard of review for improper closing arguments that provoke timely objection from opposing counsel is whether the trial court abused its discretion by failing to sustain the objection." *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002) (citing *State v. Huffstetler*, 312 N.C. 92, 111, 322 S.E.2d 110, 122 (1984) (holding that appellate courts will review the exercise of such discretion when counsel's remarks are extreme and calculated to prejudice the jury), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985)). A trial court will be found to have abused its discretion when the ruling "could not have been the result of a reasoned decision." *State v. Burrus*, 344 N.C. 79, 90, 472 S.E.2d 867, 875 (1996). Further, it is well-established that counsel are to be given wide latitude in their closing arguments to the jury. *See State v. Forte*, 360 N.C. 427, 444, 629 S.E.2d 137, 148-49, *cert. denied*, —— U.S. ——, 166 L. Ed. 2d 413 (2006); *State v. Richardson*, 342 N.C. 772, 792-93, 467 S.E.2d 685, 697, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996). Under an abuse of discretion standard of review, " '[a] prosecutor's improper remark during closing arguments does not justify a new trial unless it is so grave that it prejudiced the result of the trial.' " *State v. Rashidi*,

172 N.C. App. 628, 642, 617 S.E.2d 68, 77-78 (quoting *State v. Glasco*, 160 N.C. App. 150, 158, 585 S.E.2d 257, 263, *disc. review denied*, 357 N.C. 580, 589 S.E.2d 356 (2003)), *aff'd*, 360 N.C. 166, 622 S.E.2d 493 (2005).

In reviewing whether the trial court abused its discretion, this Court must first determine if the remarks were in fact improper. *Jones*, 355 N.C. at 131, 558 S.E.2d at 106. North Carolina General Statutes, section 15A-1230 provides that:

> During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

N.C. Gen. Stat. § 15A-1230(a) (2005). Rule 12 of the General Rules of Practice for the Superior and District Courts in North Carolina provides that "[a]ll personalities between counsel should be avoided" and "[a]busive language or offensive personal references are prohibited." Gen. R. Pract. Super. and Dist. Ct. 12, 2005 Ann. R. N.C. 11. Moreover, "[a] trial attorney may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.' " *Grooms*, 353 N.C. at 83, 540 S.E.2d at 733-34 (quoting *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994)). "Next, we determine if the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court." *Jones*, 355 N.C. at 131, 558 S.E.2d at 106 (citations omitted). Defendant argues that the prosecutor's statements violated not only section 15A-1230, but also defendant's due process rights under the Fourteenth Amendment to the U.S. Constitution, and Article I section nineteen of the North Carolina Constitution.

In the instant case, the prosecutor neither used "abusive, vituperative, and opprobrious language" nor did her comments amount to an "offensive personal reference" about defense counsel. The prosecutor's statements, although not worded as carefully as they may have been, attempted to explain the role of defense counsel Bailey, but did not amount to an attack on her. When considered within the context of the prosecutor's entire closing argument, the statements do not

amount to a violation of section 15A-1230 or defendant's due process rights. In addition, defendant has failed to show this Court how the prosecutor's statements prejudiced him and resulted in a jury verdict which would not have been reached absent the statements. Therefore, we hold the trial court did not abuse its discretion in denying defendant's motion.

Vacated in part; No error in part.

Judges CALABRIA and GEER concur.