STATE OF NORTH CAROLINA v. CHRISTOPHER RAESHAD WILSON

No. COA09-1162

(Filed 20 April 2010)

## 1. Evidence— codefendant's conviction—admission not plain error

There was no plain error where the mother of a codefendant was allowed to testify that her son was serving his time for this matter. The State concedes error, but there was other, substantial evidence of defendant's guilt. The same reasoning applies to testimony elicited by defendant on cross-examination of the same witness; even if it was not invited error, its exclusion would not have changed the result.

**2. Possession of Stolen Property— property hidden—insufficient evidence**

The trial court erred by denying defendant's motion to dismiss the charge of felony possession of stolen goods where a stolen shotgun used in the commission of a robbery was hidden by the codefendant in his mother's home. The evidence was not sufficient to establish that defendant knew or had reasonable grounds to believe that the gun was stolen.

Appeal by defendant from judgments entered 23 February 2009 by Judge Richard D. Boner in Superior Court, Gaston County. Heard in the Court of Appeals 8 March 2010.

*Attorney General Roy Cooper, by Assistant Attorney General Scott A. Conklin, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

WYNN, Judge.

Defendant Christopher Raeshad Wilson appeals from convictions on charges of two counts of robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, possession of stolen goods, and two counts of assault by pointing a gun. Upon careful review, we uphold all of his convictions except that for possession of stolen goods because we conclude the evidence was insufficient to establish that Defendant knew or had reasonable grounds to believe the gun was stolen.

At trial, the State's evidence tended to show that on 16 December 2007 at about 8:00 p.m., Albert Cedeno worked at his small grocery store in Gaston County. Tracy Rico and her two daughters were in the store. While Albert Cedeno and Tracy Rico talked, two men entered the store. The men, dressed in black, wore handkerchiefs over their faces and one carried a shotgun. The men ordered everyone to get on the ground or they would kill them all. The man with the shotgun told Albert Cedeno and Tracy Rico to hand over their money. Afterwards, the man with the gun pointed it at Tracy Rico. Albert Cedeno got between the man and Tracy Rico, and the man shot him in the stomach. The masked men then left the store.

Thereafter, Officer Matt Willis arrived at the scene and Tracy Rico described the suspects to him as two light-skinned black males, about five-eight and 145 pounds, wearing black coats, blue jeans, and ban-

dannas. After hearing the descriptions, Officer Willis radioed other officers to check Defendant's residence which he knew to be a short distance from the store. Officer Nikki Armstrong responded by going to the nearby residence and speaking to Defendant's father who revealed that Defendant was at 1217 Mountain Avenue. At that address, Officer Armstrong spoke to Diane Dameron, later identified as the mother of Codefendant Billy Ray Dellinger. Diane Dameron consented to a search of her house which revealed a shotgun in her bedroom closet.

At trial, Diane Dameron testified that her son and Defendant came to her house around 8:00 p.m. on the date of the incident. She let them in and her son went directly to her bedroom while Defendant stayed in the living room. She did not see whether her son or Defendant had anything with them, but she heard Defendant say, "[t]he Mexican man grabbed me, and I shot him in the stomach." After her son returned to the living room, he said, "I thought we had one hundred dollars." She testified that after her son and Defendant left the house, the police arrived and found the shotgun; she did not put the shotgun in her closet; and she would not keep a shotgun in the house.

During direct examination, the prosecutor asked Diane Dameron where her son (Codefendant Dellinger) was. She responded that her son was in prison serving his time. When asked if that prison time was for this matter, she replied, "yes."

On cross-examination, Defendant's counsel asked Diane Dameron if she was covering for her son when she initially failed to tell the police everything she knew on the night of the robbery. She replied, her son was doing his time; "[t]hey both did it together;" and "[i]f they did the crime, they should do the time together."

Diane Dameron's six-year-old grandson, T.F., testified for the State that he was at his grandmother's house on the night of the robbery. He stated that Codefendant Dellinger and Defendant came to his grandmother's house and Defendant said he had shot a man in the stomach. T.F. testified that he saw money on the couch, the two men counted it, and thereafter took the money with them.[1]

Later on the night of the incident, police officers arrested Defendant and Codefendant Dellinger. Defendant was charged with two counts of robbery with a dangerous weapon; one count of at-

---

1. When T.F. was first asked what the men did with the money, he replied "[m]y mama took it." He later testified, however, that after counting the money in the living room, the men took the money with them when they left.

tempted first-degree murder; one count of assault with a deadly weapon with intent to kill inflicting serious injury; one count of possession of stolen goods; and three counts of assault by pointing a gun. The shotgun retrieved from Diane Dameron's closet revealed no identifiable fingerprints.

Regarding the possession of stolen goods charge, the State presented testimony from Betty and Trent Ginn that the shotgun was stolen from their house in November 2007. Betty Ginn testified that she came home from work to find the back door broken open. She testified that money, jewelry, and her son's shotgun were stolen. Betty Ginn's son Trent identified the shotgun recovered from Mountain Avenue as his gun by reference to the serial number. He testified that he was not at his parents' home when the shotgun was stolen.

At the close of the State's evidence, the trial judge dismissed one count of assault by pointing a gun. Thereafter, Defendant moved to dismiss the charge of possession of stolen goods. The trial court denied the motion, finding that Defendant and Codefendant Dellinger brought the gun to Diane Dameron's home "for the purpose of hiding it, which in and of itself would raise an inference that they knew the weapon was hot and didn't want to be seen with it out in public."

The jury found Defendant not guilty of attempted first-degree murder but guilty of two counts of robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, possession of stolen goods, and two counts of assault by pointing a gun. On appeal from those convictions, Defendant argues the trial court (I) committed plain error by admitting testimony from Diane Dameron that Codefendant Dellinger was in prison for this matter and that Defendant and Codefendant Dellinger committed these crimes together; and (II) erred by denying Defendant's motion to dismiss the charge of felony possession of stolen goods.

I

[1] Defendant first argues that the trial court committed plain error by allowing testimony of Diane Dameron on direct examination that her son, Codefendant Dellinger, was serving his time for this matter. Defendant also argues that the trial court committed plain error in allowing the following testimony during his attorney's cross-examination of Diane Dameron:

Q: And the police showed up; and when you first start talking to them you don't let them in on any of this right?

A: I did not want to get involved. I was so shook up and nervous, I just didn't really want to get involved. I don't like to get nobody in trouble like this. I don't like reports. I'm too nervous.

Q: But you testified earlier that you were not going to cover for your son.

A: No, I'm not going to cover for him.

Q: That's what you did, wasn't it?

A: He was in with it, and he's doing his time. They both did it together, then they both should do the time together. If they did the crime, they should do the time together. I'm not picking up for my kids.

"Where, as here, a criminal defendant fails to object to the admission of certain evidence, the plain error analysis . . . is the applicable standard of review." *State v. Ridgeway*, 137 N.C. App. 144, 147, 526 S.E.2d 682, 685 (2000). "Under the plain error standard of review, defendant has the burden of showing: '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. Jones*, 358 N.C. 330, 346, 595 S.E.2d 124, 135 (2004) (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)), *cert. denied, Jones v. North Carolina*, 543 U.S. 1023, 160 L. Ed. 2d 500 (2004).

> The plain error rule applies only in truly exceptional cases. Before deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question "tilted the scales" and caused the jury to reach its verdict convicting the defendant. Therefore, the test for "plain error" places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.

*State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (citations omitted).

Our Supreme Court articulated the rule regarding the introduction of a codefendant's conviction thusly:

[T]he plea of guilty of a codefendant is not competent evidence against the defendant on trial, and . . . where one defendant had been separately tried and convicted, or had pleaded guilty prior to the defendant then on trial, the record of the codefendant's prior conviction or plea is not admissible, and the fact that the codefendant had been convicted or had pleaded guilty to the same charge is not competent. Where two persons are indicted jointly, the crime is several in nature. The guilt of one is not dependent upon the guilt of the other. If one is convicted or pleads guilty, this is not evidence of the guilt of the other.

*State v. Jackson*, 270 N.C. 773, 775, 155 S.E.2d 236, 237 (1967). Later, in *State v. Brown*, 319 N.C. 361, 354 S.E.2d 225 (1987), our Supreme Court applied this rule stating,

the jury was exposed to strong and virtually irrebuttable evidence that the alleged principals were convicted of the same crimes charged against this defendant. Such evidence must have strongly influenced the jury to believe that the alleged principals actually had committed the crimes charged here, a critical element in the charges against this defendant Brown upon the State's theory that he participated in the crimes as an aider and abettor.

*Id.* at 365-66, 354 S.E.2d at 227. The Court in *Brown* went on to hold that the error was not harmless beyond a reasonable doubt. *Id.* at 366, 354 S.E.2d at 228.

In this case, the State concedes that the cases cited by Defendant support the position that evidence of convictions against a codefendant is not competent evidence for the purpose of establishing that the current defendant also committed the crimes charged. The State argues, however, that the error does not rise to the level of plain error because there was substantial evidence of Defendant's guilt and it cannot be concluded that the jury would have reached a different verdict had the trial court excluded the testimony.

The evidence at trial tended to show that two men entered Albert Cedeno's store demanding money; one of the men pointed a shotgun at Albert Cedeno, Tracy Rico, and her children; Albert Cedeno was shot; Defendant and Codefendant Dellinger went to Diane Dameron's house that same evening; Defendant stated that he had shot a Mexican man; the two men left a shotgun in Diane Dameron's closet; they had cash with them; and the shotgun found in Diane Dameron's closet had been recently stolen.

In light of the substantial evidence presented by the State in this case, we hold that this is not a case like *Brown* where the evidence of Billy Ray Dellinger's conviction was "a critical element in the charges against this defendant . . . upon the State's theory that he participated in the crimes as an aider and abettor." *Id.* at 366, 354 S.E.2d at 227. Thus, after careful review, we cannot conclude that the erroneous introduction of Codefendant Dellinger's conviction on the State's direct examination of Diane Dameron "tilted the scales" and caused the jury to reach its verdict convicting Defendant.

Regarding Defendant's cross-examination, our Supreme Court addressed a similar issue in a recent case by holding that "[the witness] was answering a line of questioning propounded by defendant, and therefore any error as to her testimony was invited." *State v. Raines*, 362 N.C. 1, 11-12, 653 S.E.2d 126, 133 (2007), *cert. denied*, *Raines v. North Carolina*, 129 S. Ct. 2857, 174 L. Ed. 2d 601 (2009); *see also* N.C. Gen. Stat. § 15A-1443(c) (2009) ("A defendant is not prejudiced . . . by error resulting from his own conduct."). In this case, we likewise hold that even had this not been invited error, its exclusion would not have changed the result of the trial.

II

[2] Defendant further argues that the trial court committed reversible error by denying his motion to dismiss the charge of felony possession of stolen goods because the evidence was insufficient to establish that Defendant knew or had reasonable grounds to believe that the gun was stolen. We agree.

> Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.

> If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion should be allowed.

*State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980) (citations omitted). "In conducting our analysis, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992).

For a defendant to be found guilty of possession of a stolen firearm, the State must present substantial evidence that (1) the defendant was in possession of a firearm; (2) which had been stolen; (3) the defendant knew or had reasonable grounds to believe the property was stolen; and (4) the defendant possessed the [firearm] with a dishonest purpose.

*State v. Brown*, 182 N.C. App. 277, 281, 641 S.E.2d 850, 853 (2007) (citing N.C. Gen. Stat. § 14-71.1 (2003)). "Other cases upholding convictions when knowledge was at issue have contained some evidence of incriminating behavior on the part of the accused." *State v. Allen*, 79 N.C. App. 280, 285, 339 S.E.2d 76, 79, *aff'd per curiam*, 317 N.C. 329, 344 S.E.2d 789 (1986).

In this case, Defendant asserts that there was no evidence of any such incriminating behavior. Regarding the trial court's finding that Defendant and Codefendant Dellinger brought the gun to Diane Dameron's home with the purpose of hiding it, Defendant replies that "it is equally, if not more, logical to infer that [Defendant] and Billy Ray Dellinger left the gun in Diane Dameron's home because it had just been used during the perpetration of a robbery and assault."

This Court addressed the issue of knowledge to support a stolen handgun charge in *State v. Wilson*, 106 N.C. App. 342, 416 S.E.2d 603 (1992). In that case, this Court held that there was sufficient evidence of guilty knowledge where a stolen handgun, one that had been used in the perpetration of several robberies, was thrown from a car while the suspects were fleeing the police. *Id.* at 347-48, 416 S.E.2d at 606. We reiterated that "[d]efendant's guilty knowledge can be implied from the circumstances." *Id.* at 347, 416 S.E.2d at 606 (citing *State v. Parker*, 316 N.C. 295, 303, 341 S.E.2d 555, 560 (1986)). This was because an accused's flight is evidence of consciousness of guilt and therefore of guilt itself. *Id.* at 348, 416 S.E.2d at 606.

In *State v. Taylor*, 64 N.C. App. 165, 307 S.E.2d 173 (1983), *modified*, 311 N.C. 380, 317 S.E.2d 369 (1984), we held that evidence that defendant removed a firearm from his coat and threw it into bushes was sufficiently incriminating to permit a reasonable inference that defendant knew the firearm was stolen, and therefore sufficient to go to the jury on that issue.

*Id.* These cases establish the rule that guilty knowledge can be inferred from defendant's throwing away the stolen weapon, despite an intervening crime committed by defendant with the weapon.

In the present case, the evidence showed that shortly after the robbery, Defendant and Codefendant Dellinger appeared at Diane Dameron's home. They beat on the door with some urgency, and when they were admitted Codefendant Dellinger went directly to Diane Dameron's bedroom. The two men didn't stay for very long, but left the house shortly after disposing of the shotgun in the bedroom closet. The evidence showed that the shotgun recovered from Diane Dameron's house on 16 December 2007 was the same shotgun that was stolen from the Ginn residence in November 2007. The State presented no evidence that Defendant actually knew the shotgun was stolen. The issue is thus whether Defendant's guilty knowledge can be inferred from his placement of the stolen property.

While it is certainly possible to hide stolen property in one's residence, see *State v. Wilson*, 176 N.C. 751, 755, 97 S.E. 496, 497 (1918), the mere fact of depositing it there does not by itself constitute incriminating behavior. Codefendant Dellinger's leaving the gun in his mother's home is not analogous to throwing it from a car, as in *Wilson*, 106 N.C. App. at 348, 416 S.E.2d 603 at 606, or tossing it into the bushes, as it *Taylor*. Viewing this evidence in the light most favorable to the State, we conclude that the evidence was insufficient to establish that Defendant knew or had reasonable grounds to believe the gun was stolen. The trial court therefore erred in denying Defendant's motion to dismiss the charge of felony possession of stolen goods.

No prejudicial error in part; reversed in part.

Chief Judge MARTIN and Judge STEPHENS concur.