An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1399
NORTH CAROLINA COURT OF APPEALS

Filed: 17 June 2014

STATE OF NORTH CAROLINA

v.

ANTONIO EDWARD WEST,
    Defendant.

Pasquotank County
Nos. 10 CRS 001724-25, 051007

Appeal by defendant from judgments entered 19 March 2013 by Judge Wayland J. Sermons in Pasquotank County Superior Court. Heard in the Court of Appeals 5 May 2014.

> *Roy Cooper, Attorney General, by Danielle Marquis Elder, Special Deputy Attorney General, for the State.*
>
> *John R. Mills, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Antonio Edward West appeals from judgments entered upon jury verdicts finding him guilty of first-degree murder, attempted murder, assault with a deadly weapon with intent to kill inflicting serious injury, and possession of a stolen firearm. We find no error in defendant's trial.

On 12 June 2010, Dejuan[1] Brown was shot and killed after shots were fired into a crowd at a high school graduation party. Earlier that day, defendant and his friends arrived at the party uninvited and were asked to leave. Defendant and his friends left, but returned to the party later that evening. Around 11:00 p.m., a dispute arose outside the party. As the dispute escalated, a large crowd of people gathered. Shortly thereafter, shots were fired. Witnesses saw defendant firing shots into the crowd. Shamon Green testified that defendant pointed his gun directly at him. Green then took off running and was shot in the wrist. When Green looked back to where he had been previously standing, he saw Brown laying on the ground. Brown died from a single gunshot wound to his head.

After fleeing from the scene, defendant flagged down Brian Johnson and asked him for a ride to the hospital because his friend had been shot and injured. Johnson drove defendant and his friend to the hospital and parked outside the emergency room entrance. Security surveillance cameras outside the hospital recorded defendant helping his friend into the hospital. Less than two minutes later, defendant returned to the car. Johnson then drove around to the side of the hospital where he parked

---

[1] The record variably refers to the victim as "Daquan" and "Dejuan." For consistency with the transcript, we refer to the victim as "Dejuan" Brown.

and got out to urinate by the side of the car. There were no surveillance cameras located where Johnson parked the car, but he noticed defendant step out of the car and dispose of a balled-up shirt in a dumpster. Johnson later showed police where defendant had thrown away the shirt.

Police searched a vat of used cooking oil outside the hospital kitchen and located two weapons, a .380 caliber Cobra handgun and a .380 caliber Hi-Point handgun, wrapped inside a shirt. The guns and bullets found inside each were sent to the State Bureau of Investigation ("S.B.I.") for analysis. In addition, the .380 caliber bullet recovered from Brown's head during autopsy as well as several shell casings, including shell casings from a .380 caliber weapon that were found near where Brown was shot, were also submitted to the S.B.I.

The State also presented evidence tracing the purchase of the .380 caliber Cobra handgun to Emanuel Jinks. The parties stipulated that the gun was stolen from Jinks in 2009 by a man who was incarcerated at the time of the shooting. A pawn shop manager and firearms dealer testified that defendant placed a special order for a .380 caliber Cobra magazine on 7 June 2010 and the store's records confirmed that defendant picked up the magazine on 10 June 2010.

S.B.I. Special Agent Jessica Pappas was tendered as an

expert witness in forensic firearms identification. Prior to trial, defendant moved in limine to exclude Agent Pappas's expert testimony. The trial court denied the motion but further ruled as follows:

> The Court, however, is going to limit the opinion of the expert to not allow the expert to testify that a match may be done to the exclusion of all other guns in the universe. The expert may testify, as was stated by the expert on the stand during this voir dire, that a bullet came from a particular gun to within a reasonable degree of certainty in the firearms examination field and any other language that describes what that field is, and what the reasonable degree of certainty is. I'm just not going to allow her to say that it is to the exclusion of all other guns in the universe. And that will be my ruling in this matter.

Agent Pappas testified that she examined the .380 caliber Cobra and the .380 caliber Hi-Point handguns retrieved from the oil vat outside the hospital, the bullet recovered from Brown's head, and the shell casings collected from the scene of the shooting. Based on her analysis, Agent Pappas opined that the .380 caliber bullet recovered from Brown's head as well as a .380 caliber shell casing found near where Brown was shot were fired from the .380 caliber Cobra handgun.

At the close of the State's evidence, defendant moved to dismiss the charge of possession of a stolen firearm, arguing that the evidence was insufficient to establish defendant knew

or had reason to know that the firearm was stolen. The trial court denied the motion. The jury found defendant guilty of all charges. Defendant appeals.

_____

On appeal, defendant argues the trial court erred by: (I) admitting Agent Pappas's expert testimony, and (II) denying defendant's motion to dismiss the charge of possession of a stolen firearm because the evidence was insufficient to establish that defendant knew or had reason to know that the gun was stolen.

I.

Defendant first argues the trial court erred by admitting Agent Pappas's firearm toolmark identification testimony. Specifically, defendant claims Agent Pappas's testimony, which violated the trial court's prior ruling, was unreliable and its admission violated defendant's constitutional right to be tried based on reliable evidence. We disagree.

Contrary to defendant's assertion, Agent Pappas's testimony did not violate the trial court's ruling limiting her testimony. After voir dire examination of Agent Pappas, the court found the expert testimony reliable and denied defendant's motion in limine to exclude the testimony. The court's ruling only limited Agent Pappas from testifying that a bullet was fired

from a particular gun to the exclusion of all others. Our review of the record reveals that Agent Pappas opined, based on her analysis, that the bullet recovered from Brown's head and a shell casing retrieved from the scene of the shooting were fired from the .380 caliber Cobra handgun. Agent Pappas did not testify, as defendant contends, that "[defendant's] gun was the only gun in the world that could have been the source of the bullet and casing." Agent Pappas's testimony, therefore, did not violate the trial court's narrow limitation on the testimony.

A trial court's decision to allow expert testimony will not be reversed on appeal absent an abuse of discretion. *State v. Morgan*, 359 N.C. 131, 160, 604 S.E.2d 886, 904 (2004), *cert. denied*, 546 U.S. 830, 163 L. Ed. 2d 79 (2005).

> To determine if proffered expert testimony is admissible under North Carolina Rule of Evidence 702, a trial court must conduct a three-step inquiry to ascertain whether: (1) the expert's method of proof is reliable; (2) the witness presenting the evidence qualifies as an expert; and (3) the evidence is relevant.

*State v. Britt*, 217 N.C. App. 309, 313-14, 718 S.E.2d 725, 729 (2011). Here, defendant only challenges the reliability of Agent Pappas's testimony.

A trial court should first look to precedent for guidance

in determining whether the method of proof underlying an expert's opinion is reliable. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 459, 597 S.E.2d 674, 687 (2004). Once the trial court determines the expert's method of proof is reliable, "any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility." *Id.* at 461, 597 S.E.2d at 688. It is well settled that firearm toolmark identification is recognized as a reliable method of proof as "[c]ourts in North Carolina have upheld the admission of expert testimony on firearm toolmark identification for decades." *Britt*, 217 N.C. App. at 314, 718 S.E.2d at 729.

Defendant concedes the reliability of firearm toolmark identification. Nonetheless, defendant claims Agent Pappas's testimony was unreliable because firearm toolmark identification does not support her "conclusion that only [defendant's] gun could have fired the bullet recovered from [Brown's] brain." We are unpersuaded by this contention. As we previously stated, Agent Pappas did not testify that only defendant's gun could have fired the lethal bullet. Because precedent recognizes the reliability of firearm toolmark identification, defendant's argument as to Agent Pappas's conclusions goes to the weight of the testimony and not its admissibility. We therefore conclude

that the trial court properly followed precedent and did not abuse its discretion in admitting the expert testimony. This disposition renders our consideration of defendant's remaining argument regarding the admission of the expert testimony unnecessary.

## II.

Defendant next contends the evidence presented was insufficient to support a conviction for possession of a stolen firearm because defendant purchased the gun from a firearms dealer shortly before the shooting and his disposal of the gun immediately after the shooting was insufficient evidence to establish that he knew or had reason to know that the gun was stolen. The State points out that the evidence showed that defendant purchased a magazine, not the gun, days before the shooting and asserts that defendant's argument is foreclosed by well-established precedent. In response, defendant concedes his factual error and further concedes that under the authority of *State v. Wilson*, 203 N.C. App. 547, 691 S.E.2d 734 (2010), the evidence was sufficient to establish defendant's guilty knowledge. We agree.

To convict a defendant of possession of a stolen firearm, "the State must present substantial evidence that (1) the defendant was in possession of a firearm; (2) which had been

stolen; (3) the defendant knew or had reasonable grounds to believe the property was stolen; and (4) the defendant possessed the pistol with a dishonest purpose." *State v. Brown*, 182 N.C. App. 277, 281, 641 S.E.2d 850, 853 (2007). "'Other cases upholding convictions when knowledge was at issue have contained some evidence of incriminating behavior on the part of the accused.'" *Wilson*, 203 N.C. at 554, 691 S.E.2d at 739 (quoting *State v. Allen*, 79 N.C. App. 280, 285, 339 S.E.2d 76, 79, *aff'd per curiam*, 317 N.C. 329, 344 S.E.2d 789 (1986)). "[G]uilty knowledge can be inferred from defendant's throwing away [of] the stolen weapon, despite an intervening crime committed by defendant with the weapon." *Id.* at 554, 691 S.E.2d at 740.

Here, the State's evidence showed that defendant fled from the scene of the shooting and disposed of the gun by wrapping it in the shirt he was wearing during the shooting and throwing it in an oil vat outside the hospital. This evidence is sufficiently incriminating to permit a reasonable inference that defendant knew or had reason to know that the gun was stolen. *See State v. Taylor*, 64 N.C. App. 165, 169, 307 S.E.2d 173, 176 (1983) (concluding that evidence that the defendant removed a firearm from his coat and threw it into nearby bushes was "sufficiently incriminating to permit a reasonable inference that defendant knew or must have known that the firearm was

stolen, and thus sufficient to support a finding to that effect by the jury"), *aff'd in part and rev'd in part on other grounds*, 311 N.C. 380, 317 S.E.2d 369 (1984).  We therefore find no error in defendant's conviction for possession of a stolen firearm.

No Error.

Judges STEELMAN and DILLON concur.

Report per Rule 30(e).