IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-875

Filed 17 December 2024

Brunswick County, Nos. 22CRS482, 50300, 50325-26

STATE OF NORTH CAROLINA

v.

MACK VERNON BRACEY, Defendant.

Appeal by defendant from judgment entered 31 January 2023 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 19 March 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Adrina G. Bass, for the State.*

> *Hynson Law, PLLC, by Warren D. Hynson, for defendant-appellant.*

FLOOD, Judge.

Defendant Mack Vernon Bracey appeals from the trial court's denial of Defendant's motion to dismiss his charge of possession of a stolen firearm for insufficient evidence. On appeal, Defendant argues the State failed to present sufficient evidence that Defendant knew or had reasonable grounds to know the gun he possessed was stolen. Upon review, we conclude the State presented sufficient

- 1 -

evidence that Defendant knew or had reasonable grounds to know the gun was stolen property, based on incriminating circumstances, and the trial court did not err in denying Defendant's motion to dismiss this charge for insufficient evidence.

## I. **Factual and Procedural Background**

On 31 January 2022, Officer Hannah Jackson was parked outside the Day's Inn hotel in Shallotte, North Carolina, which is known by law enforcement as a "hub for illegal activity," when an empty stationary vehicle caught her attention as it was parked in front of the hotel. Officer Jackson ran the vehicle's license plate and ascertained the vehicle belonged to Defendant, who had two felony warrants from Columbus County and two felony warrants from Brunswick County.

For the next six hours, Officer Jackson observed the vehicle from her police car until Defendant approached the vehicle and entered it via the driver's side door, leaving the door open. Officer Jackson called her partner[1] to the scene. Once her partner arrived, Officer Jackson then approached Defendant's vehicle from the passenger's side, made contact with Defendant, and ordered Defendant to exit the vehicle. Defendant refused to exit, stating "I'm not getting out of the car"; began "reaching around for some things"; and appeared to be "trying to hide things." As Defendant was reaching around in his vehicle, Officer Jackson's partner walked around to the vehicle's driver's side. Defendant immediately "shut [the driver's side

---

[1] A review of the Record did not indicate Officer Jackson's partner's name.

door,] put the car in drive, and took off." Officers quickly began their pursuit of Defendant.

As Defendant fled from the officers' pursuit, he drove at sixty-five miles per hour ("mph") in a thirty-five mph zone, running red lights and driving "into the opposite lane of travel[.]" At some point during the pursuit, Defendant was driving "95 to 100" mph in a sixty mph zone; thereafter, having slowed down at some point, he crashed his vehicle between two trees, exited it, and continued to flee on foot, into a swampy area.

The officers pursued Defendant on foot and eventually apprehended him. Upon apprehension, the officers proclaimed to Defendant that they had found a gun, after having seen an empty gun holster on the driver's side in Defendant's vehicle when looking in after the crash. Defendant asked, "[w]here?" and the officers replied, "[i]n the woods . . . where you tossed it." Defendant then replied: "Oh. There ain't no gun." From this exchange, Officer Jackson determined "there was a gun somewhere" on the premises. Officer Jackson then asked Defendant why he ran, and Defendant claimed Officer Jackson was interrupting his "hit" of cocaine.

After further questioning Defendant about what may be back at the Day's Inn hotel he had left, Defendant denied having anything in his hotel room, but officers later found .38 caliber ammunition, as well as illegal narcotics, inside the room. Defendant was arrested, and his car was towed to an impound lot.

The next day, Officer Jackson searched Defendant's vehicle and found a loaded

.38 caliber revolver in a hidden compartment in the steering wheel area of the vehicle. As to the hidden compartment, Officer Jackson later testified:

> I noticed that on the left side of the steering wheel where you would normally turn your headlights on and off, it was a little loose looking, so I used that pry bar to pop it open. It popped open very easily. And it was a [] natural void is what it's called in your vehicle where there's places that you can hide things. Just open space. So there's an open space behind there. A few wires for the headlights. And I noticed the butt of a revolver.

Further, upon investigation, officers later discovered the gun had been previously reported stolen.

Defendant was indicted on several charges, including (1) fleeing to elude arrest with two aggravating factors, exceeding the speed limit by fifteen mph and driving recklessly; (2) possession of a stolen firearm; and (3) possession of a firearm by felon.

On 30 January 2023, this matter came on for trial. At the close of the State's evidence, Defendant moved to dismiss the charge of possession of a stolen firearm, arguing the State had not met its burden of proving Defendant knew that the gun was in the car, or that he knew the gun was stolen. The trial court denied this motion. At the close of all evidence, Defendant renewed his motion to dismiss, which was also denied. The jury found Defendant guilty of possession of a stolen firearm and guilty as to the other charges not relevant to this appeal, and Defendant was sentenced accordingly.

Defendant timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to review the appeal of the final judgment of a superior court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2023).

## III. <u>Standard of Review</u>

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Golder*, 374 N.C. 238, 249, 839 S.E.2d 782, 790 (2020) (citation omitted). Under North Carolina law, "[w]hen a trial court is considering a defendant's motion to dismiss based upon an insufficiency of the evidence presented, the trial court 'is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight.'" *State v. Brown*, 182 N.C. App. 277, 281, 641 S.E.2d 850, 853 (2007) (citation omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate or would consider necessary to support a particular conclusion." *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (internal citations omitted) (cleaned up). "A substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight." *Id.* at 412, 597 S.E.2d at 746 (citation and internal quotation marks omitted). "It is the function of the jury to determine the facts in the case from the evidence and to determine what the evidence proves or fails to prove." *State v. Taylor*, 64 N.C. App 165, 169, 307 S.E.2d 173, 176, (1983).

Further, "the evidence must be considered in the light most favorable to the

State [and] the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom." *Golder*, 374 N.C. at 250, 839 S.E.2d at 790 (citation and internal quotation marks omitted). It is not the job of this Court, nor that of the trial court, to weigh the evidence; we must determine only whether the State presented substantial evidence such that a reasonable juror might accept the evidence as adequate to support a particular conclusion. *See Garcia*, 358 N.C. at 412, 597 S.E.2d at 746; *see also Golder*, 374 N.C. at 249–50, 839 S.E.2d at 790.

## IV. <u>Analysis</u>

Defendant argues the trial court erred in denying his motion to dismiss the charge for possession of a stolen firearm for insufficient evidence. Specifically, Defendant contends the State failed to present sufficient evidence that Defendant "knew or had reasonable grounds to believe the [gun] was stolen." We disagree.

For a defendant to be properly found guilty of possession of a stolen firearm, "the State must present substantial evidence that (1) the defendant was in possession of a firearm; (2) which had been stolen; (3) the defendant knew or had reasonable grounds to believe the property was stolen; and (4) the defendant possessed the pistol with a dishonest purpose." *State v. Brown*, 182 N.C. App. 277, 281, 641 S.E.2d 850, 853 (2007). "Knowledge that property was stolen may be inferred from incriminating circumstances[,]" *Taylor*, 64 N.C. App. at 169, 307 S.E.2d at 176, and our Supreme Court has provided that "an accused's flight is evidence of consciousness of guilt and therefore of guilt itself." *State v. Parker*, 316 N.C. 295, 304, 341 S.E.2d 555, 560

(1986).

This Court has previously considered appeals concerning a defendant's knowledge of property being stolen, and for which we concluded such knowledge may be evinced by incriminating circumstances. For instance, in *Taylor*, where, after being yelled at by a passerby, the "defendant removed the firearm from his coat, stooped near a car and attempted to surreptitiously hide or dispose of it by throwing it into nearby bushes[,]" we concluded this evidence was "sufficiently incriminating to permit a reasonable inference that [the] defendant knew or must have known that the firearm was stolen[.]" *Taylor*, 64 N.C. App. at 169, 307 S.E.2d at 176.[2] Additionally, in *State v. Wilson*, where the defendant fled by car from police officers and had his companion throw a gun that the defendant and his companion used in a robbery out of the car window, we concluded this evidence was "sufficiently incriminating to permit a reasonable inference that [the] defendant knew the firearm was stolen, and [was] therefore sufficient to go to the jury on that issue." 106 N.C. App. 342, 348, 416 S.E.2d 603, 606 (1992).

Here, like the defendant in *Wilson*, Defendant fled by car from the officers, running red lights and exceeding the speed limit, all while the gun was inside his vehicle. *See* 106 N.C. App. at 348, 416 S.E.2d at 606; *see also Parker*, 316 N.C. at 304, 341 S.E.2d at 560. Further, like the defendant in *Taylor*, who hid the gun in a bush,

---

[2] Black Law's Dictionary defines "surreptitious" as "done by stealth[.]" *Surreptitious*, Black's Law Dictionary (12th ed. 2024).

Defendant "surreptitiously hid[]" the gun in his vehicle behind a loose panel in the steering wheel. *See Taylor*, 64 N.C. App. at 169, 307 S.E.2d at 176. Moreover, during his exchange with the officers upon his apprehension, Defendant denied possessing a gun and further denied having anything in his hotel room, but officers later found the gun in the hidden compartment of Defendant's vehicle, and found .38 caliber ammunition inside the room, which is the type of ammunition for which the gun is chambered.

Per our standard of review, when considering the sufficiency of the evidence and viewing the evidence in the light most favorable to the State, these facts indicate the State presented substantial evidence that a reasonable juror may find that Defendant knew or had reasonable grounds to believe that the gun discovered in his vehicle was stolen. *See Garcia*, 358 N.C. at 412, 597 S.E.2d at 746; *see also Golder*, 374 N.C. at 249–50, 839 S.E.2d at 790; *Wilson*, 106 N.C. App. at 348, 416 S.E.2d at 606; *Taylor*, 64 N.C. App. at 169, 307 S.E.2d at 176.

Defendant further argues, however, that the facts of this case are more akin to those in *State v. Wilson*, which this Court decided in 2010. In *Wilson*, the sole issue on appeal was "whether [the d]efendant's guilty knowledge can be inferred from his *placement* of the stolen property." 203 N.C. App. 547, 555, 691 S.E.2d 734, 740 (2010) (emphasis added). There, the defendant stored a stolen gun in his mother's closet after committing a robbery. *Id.* at 549, 691 S.E.2d at 736–37. At trial, the State presented evidence of those facts, and the defendant moved to dismiss for insufficient

evidence that he knew or should have known the gun was stolen. *Id.* at 549–50, 691 S.E.2d at 736–37. On appeal, we agreed and held "the mere fact of depositing [evidence in one's residence] does not by itself constitute incriminating behavior." *Id.* at 555, 691 S.E.2d. at 740.

Here, however, Defendant's gun was not simply placed in his vehicle, as one might simply place a firearm in a closet. *See id.* at 549, 691 S.E.2d at 736–37. Rather, the gun was stealthily hidden in a compartment of the steering wheel of Defendant's vehicle, requiring removal of a loose panel for the gun to be accessed. Further, although a gun holster was found in Defendant's vehicle by the driver's side door, the gun was found not in or with the holster, but rather in this hidden compartment of the steering wheel, indicating that Defendant "surreptitiously" hid the gun. *See Taylor*, 64 N.C. App at 169, 307 S.E.2d at 176. Finally, unlike *Wilson*, and as discussed above, there is other incriminating evidence, such as Defendant's flight from the officers and the .38 caliber ammunition found in his hotel room, from which a reasonable juror may conclude that Defendant knew or had reasonable grounds to believe that the gun discovered in his vehicle was stolen. *See Garcia*, 358 N.C. at 412, 597 S.E.2d at 746; *see also Golder*, 374 N.C. at 249, 839 S.E.2d at 790.

As the State presented evidence from which a reasonable juror may find Defendant guilty, we conclude the State met its evidentiary burden of presenting substantial evidence. *See Garcia*, 358 N.C. at 412, 597 S.E.2d at 746; *see also Golder*, 374 N.C. at 249–50, 839 S.E.2d at 790. Accordingly, it was not error for the trial court

to deny Defendant's motion to dismiss for insufficient evidence, and we affirm the trial court's denial.

## V. **Conclusion**

Upon review, viewing the evidence in the light most favorable to the State, we conclude the State presented substantial evidence based on incriminating circumstances that Defendant knew or had reasonable grounds to believe the gun was stolen. We therefore affirm the trial court's denial of Defendant's motion to dismiss his charge of possession of a stolen firearm for insufficient evidence.


AFFIRMED.

Judge STROUD concurs.

Judge MURPHY dissents in separate opinion.

MURPHY, Judge, dissenting.

I respectfully dissent from the Majority's holding that the State presented substantial evidence that Defendant knew or had reasonable grounds to believe that the .38 revolver discovered in his vehicle was stolen. I would hold that the State did not present sufficient evidence to persuade a rational juror of Defendant's guilty knowledge as, even in the light most favorable to the State, no evidence or reasonable intendment drawn therefrom indicates a connection between Defendant's actions and knowledge or reasonable grounds to believe that the firearm was stolen. Instead, I find the factual circumstances to be similar to those in *State v. Wilson*, 203 N.C. App. 547 (2010), wherein we held that, "[w]hile it is certainly possible to hide stolen property in one's residence, the mere fact of depositing it there does not by itself constitute incriminating behavior." *Id.* at 555 (citation omitted).

In *Wilson* (2010), the State's evidence tended to show that the defendant and his accomplice robbed a convenience store using a firearm that had been stolen from its owner's home around or about one month earlier. *Id.* at 548-550. After the robbery, the defendant and his accomplice visited the accomplice's mother's home and deposited the firearm in her bedroom closet. *Id.* at 549. The defendant was charged, *inter alia*, with possession of a stolen firearm and moved at trial to dismiss the charge

for lack of sufficient evidence that he knew or had reasonable grounds to believe that the firearm was stolen. *Id.* at 550. The trial court denied the defendant's motion to dismiss, reasoning that the defendant's behavior in bringing the firearm to his accomplice's mother's home "for the purpose of hiding it[] . . . in and of itself would raise an inference that [he] knew the weapon was [']hot['] and didn't want to be seen with it out in public." *Id.* We reversed, holding that, unlike in *Taylor*, *Parker*, and *Wilson* (1992), we could not infer the defendant's "guilty knowledge" that the firearm had been stolen from his mere storage of that firearm in his accomplice's mother's home. *Id.* at 555.

Here, the State's evidence tended to show that, on 31 January 2022, Defendant—who was already a convicted felon and had four active felony warrants for his arrest—was confronted in a hotel parking lot by law enforcement officers while inside of his vehicle as he was "trying to get a hit in[]" of the cocaine in his possession. Defendant fled from the officers in a high-speed motor vehicle pursuit until he crashed into a wooded, swampy area. Defendant exited the vehicle and fled from the officers in a foot chase until he was apprehended and questioned. In a preliminary search of Defendant's vehicle, law enforcement officers located an empty gun holster but were unable to locate any firearm on the scene. When questioned about a firearm found outside the vehicle, Defendant denied its existence. The next day, Officer Jackson located a firearm tucked into a natural void of Defendant's vehicle during a search at the impound lot and determined from its serial number that it had been

reported stolen. Defendant argues, and I agree, that the factual circumstances underlying the revolver here more closely align with those in *Wilson* (2010), where mere storage of a stolen firearm in the accomplice's mother's residence was not substantial evidence of guilty knowledge of the gun's stolen status.

In *Taylor*, the State presented evidence that, after the defendant was confronted by a passerby, he was witnessed pulling the stolen firearm from his jacket and disposing of it in the bushes. *State v. Taylor*, 64 N.C. App. 165, 169 (1983). In *Parker*, the State presented evidence of circumstances surrounding the defendant's acquisition of the stolen vehicle—the defendant's role as a go-between for two individuals located a short distance from one another, the purchase price of $800.00 for a vehicle worth substantially more, and the lack of vehicle title—*and* of the defendant's flight. *State v. Parker*, 316 N.C. 295, 304 (1986). In *Wilson* (1992), the State presented evidence that the defendant disposed of the stolen firearm during the police pursuit. *State v. Wilson*, 106 N.C. App. 342, 347-48 (1992).

Here, unlike in the aforementioned cases, the State presented no evidence of the circumstances surrounding Defendant's acquisition of the firearm; no evidence of when the firearm was stored in the natural void of Defendant's vehicle, including whether this storage took place during the flight; and no evidence tending to relate Defendant's flight to the stolen firearm as opposed to his outstanding warrants, his possession of any firearm itself being a felony, and additional flight after committing felony fleeing/eluding arrest.

While "an accused's flight is evidence of consciousness of guilt and therefore of guilt itself[,]" *id.* at 348, substantial evidence that Defendant is guilty of *some* crime is *not* substantial evidence that he committed this particular crime, no more specifically that he knew or had reasonable grounds to believe that the firearm in his possession was stolen. In the light most favorable to the State, substantial evidence of Defendant's flight on 31 January 2022 is not, by inference and without more, substantial evidence of every knowing element of every crime which he could plausibly be charged with committing that day. The facts and circumstances warranted by the State's evidence here do no more than raise a suspicion or conjecture as to Defendant's guilty knowledge of the gun's stolen status, "since there would still remain a reasonable doubt as to [D]efendant's guilt." *State v. Turnage*, 362 N.C. 491, 494 (2008). I would hold that the trial court erred in denying Defendant's motion to dismiss the charge of possession of a stolen firearm because the State failed to present substantial evidence that Defendant knew or had reasonable grounds to believe that the .38 revolver discovered in his vehicle was stolen. I respectfully dissent.