STATE OF NORTH CAROLINA v. RASHAMELL Q. BILLINGER, Defendant

No. COA10-1412

(Filed 5 July 2011)

**1. Firearms and Other Weapons— possession of weapon of mass death and destruction—motion to dismiss—sufficiency of evidence—possession**

The trial court did not err by denying defendant's motion to dismiss the charge of possession of a weapon of mass death and destruction based on alleged insufficient evidence of possession. The evidence was sufficient to support a reasonable inference that defendant owned and constructively possessed a sawed-off shotgun.

STATE v. BILLINGER

[213 N.C. App. 249 (2011)]

**2. Conspiracy— failure to allege essential element—agreement to commit unlawful act**

The trial court erred by convicting defendant on the charge of conspiracy to commit robbery with a dangerous weapon. The State's failure to allege an essential element of the crime of conspiracy, the agreement to commit an unlawful act, rendered the indictment facially defective and deprived the trial court of jurisdiction to adjudicate the charge.

**3. Damages and Remedies— restitution—no jurisdiction**

The trial court's restitution award was vacated because there was no conspiracy conviction attached to it due to the trial court's lack of jurisdiction.

Appeal by defendant from judgments entered 21 April 2010 by Judge William R. Pittman in Hoke County Superior Court. Heard in the Court of Appeals 13 April 2011.

*Attorney General Roy Cooper, by Assistant Attorney General John A. Payne, for the State.*

*Thomas R. Sallenger for defendant-appellant.*

HUNTER, Robert C., Judge.

Defendant Rashamell Q. Billinger appeals his convictions for possession of a weapon of mass death and destruction and conspiracy to commit robbery with a dangerous weapon. After careful review, we find no error with respect to defendant's possession conviction, but conclude that the conspiracy indictment is facially defective, requiring vacating that conviction as well as the restitution award based on that conviction.

.          Facts

At trial, the State presented evidence tending to establish the following facts: Late in the afternoon on 26 June 2008, defendant, Kerry Braithwaite, Jonathan Jackson, and Jevaris McArn, along with others, met at Mr. Braithwaite's mother's house in Raeford, North Carolina. The men played basketball in the cul-de-sac and later played cards in the Braithwaites' garage. During the card game, Mr. Jackson complained about needing money to make his car payment. Defendant also indicated that he needed money.

When the card game ended around 10:00 p.m., the four men got into Mr. Jackson's blue Dodge Charger, with Mr. Jackson driving, Mr. Braithwaite in the front passenger seat, Mr. McArn in the backseat behind Mr. Braithwaite, and defendant in the back behind Mr. Jackson. On the way to get something to eat, Mr. Jackson suggested robbing a nearby Hardees restaurant and defendant agreed. As they drove by the Hardees, however, they realized that the restaurant was closed and decided to go back to the Braithwaite residence. On the way back, defendant told Mr. Jackson to "drop him off" at the Food Lion grocery store near the Braithwaites' house, saying that "[h]e needed to find some money" and that he was going to try to rob the Food Lion or "something like that." When Mr. Jackson pulled into an alley between the grocery store and Mi Casita's, a Mexican restaurant, defendant got out of the car carrying a black pump action shotgun, owned by Mr. McArn. Defendant, who was wearing a black shirt, "baggy" blue pants, black Timberland boots, and a black bandana, "tucked" the shotgun into his pants so that it could not be seen and went behind the buildings.

Luis Alberto Reyes-Perez, a waiter at Mi Casita's, was leaving the restaurant through the alley behind the building, when he encountered an African-American male—later identified as defendant—wearing "Timber boots," baggy jeans, a black handkerchief over his face, and a black jacket with a hood over his head. Defendant "pulled out" a "dark"-looking weapon, roughly 24 inches long, that appeared to be a shotgun, pointed it at Mr. Reyes-Perez, and demanded his money. As Mr. Reyes-Perez was trying to take his money out of his apron, the gun discharged, hitting Mr. Reyes-Perez in his right arm. At that point, defendant "took off running" and Mr. Reyes-Perez climbed into his co-worker's van and was eventually taken to the hospital.

As the men in the Charger were driving by the front of the Food Lion, they thought they heard a gunshot and saw defendant running across a field behind Mi Casita's. Although Mr. Jackson did not want to pick up defendant, Mr. McArn told the other men that defendant had his shotgun and that they needed to "go pick him up." As they approached, defendant jumped into the backseat of the Charger with Mr. McArn's shotgun and the men drove back to Mr. Braithwaite's mother's house. Shortly after returning, defendant left the Braithwaite residence with several other people.

Captain John Kivett, with the Hoke County Sheriff's Department, responded to the reported shooting at Mi Casita's, and, while waiting for the K9 unit to arrive, he received another dispatch about shots

being fired about two blocks away. Captain Kivett and two sheriff's deputies responded to the second dispatch, which resulted in their going to the Braithwaite residence, where they saw several people standing outside in the yard. While investigating the "shots-fired" call, Captain Kivett noticed an "unfired" shotgun shell laying in the yard. The deputies then searched the perimeter of the yard and found a black, pump action shotgun covered in a red "hoodie." Captain Kivett also searched Mr. Braithwaite's car, finding in plain view a blue-in-color single-shot shotgun in the rear floorboard.

Defendant was charged with attempted first-degree murder (08 CRS 51486), attempted robbery of Mr. Reyes-Perez with a dangerous weapon (08 CRS 51487); conspiracy to rob Mr. Reyes-Perez with a dangerous weapon (08 CRS 51487); possession of a weapon of mass death and destruction (08 CRS 51492); assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI") (08 CRS 51488); three counts of discharging a firearm into occupied property (08 CRS 51489-91); and, conspiracy to rob the Hardees with a dangerous weapon (09 CRS 945). Defendant pled not guilty and the case proceeded to trial, where, at the conclusion of all the evidence, defendant moved to dismiss all the charges against him. The State voluntarily dismissed two counts of discharging a weapon into occupied property and the trial court, after hearing arguments, dismissed the third count. The court, however, denied defendant's motion to dismiss the charges of attempted murder, AWDWIKISI, attempted armed robbery, possession of a weapon of mass death and destruction, conspiracy to rob Mr. Reyes-Perez, and conspiracy to rob the Hardees. The jury acquitted defendant of attempted murder, attempted armed robbery, AWDWIKISI, and conspiracy to rob the Hardees, but found defendant guilty of conspiracy to rob Mr. Reyes-Perez with a dangerous weapon and possession of a weapon of mass death and destruction. The trial court sentenced defendant to consecutive presumptive-range terms of 25 to 39 months imprisonment on the conspiracy charge and 16 to 20 months on the possession charge, suspended the sentence on the possession conviction, and imposed 36 months of supervised probation. The trial court also awarded $46,059.00 in restitution in connection with the possession charge. Defendant timely appealed to this Court.

I

**[1]** Defendant argues that the trial court erred in denying his motion to dismiss the charge of possession of a weapon of mass death and destruction. In ruling on a defendant's motion to dismiss, the trial court must determine whether the State has presented substantial

STATE v. BILLINGER

[213 N.C. App. 249 (2011)]

evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator. *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996). "Substantial evidence" is that amount of relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). When considering the issue of substantial evidence, the trial court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). "Whether [the] evidence presented constitutes substantial evidence is a question of law for the court[,]" *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991), "which this Court reviews *de novo*," *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007).

N.C. Gen. Stat. § 14-288.8 (2009) makes it "unlawful for any person to manufacture, assemble, possess, store, transport, sell, offer to sell, purchase, offer to purchase, deliver or give to another, or acquire any weapon of mass death and destruction[,]" which, pertinent to this case, includes "any shotgun with a barrel or barrels of less than 18 inches in length or an overall length of less than 26 inches . . . ." N.C. Gen. Stat. § 14-288.8(a), (c)(3). In order to obtain a conviction for possession of a weapon of mass death and destruction, the State must prove two elements beyond a reasonable doubt: (1) that the weapon is a weapon of mass death and destruction and (2) that defendant knowingly possessed the weapon. *State v. Watterson*, 198 N.C. App. 500, 504-05, 679 S.E.2d 897, 900 (2009). Defendant does not challenge the sufficiency of the evidence with respect to whether the blue sawed-off shotgun constitutes a weapon of mass death and destruction,[1] but, rather, contends that the State failed to present sufficient evidence of possession.

Possession of a firearm may be actual or constructive. *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). A person has actual possession of a firearm if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use. *State v. Reid*, 151 N.C. App. 420, 428-29, 566 S.E.2d 186, 192 (2002). In contrast, a person has constructive possession of a firearm when, although not having

---

1. This firearm, marked as State's Exhibit 13, was identified at trial as a "blue-in-color" Iver Johnson 12 gauge single-shot shotgun, with a barrel length of 18.25 inches and an overall length of 25.5 inches.

actual possession, the person has the intent and capability to maintain control and dominion over the firearm. *State v. Taylor*, —— N.C. App. ——, ——, 691 S.E.2d 755, 764 (2010).

The State, in its brief, argues that the evidence that defendant owned the blue sawed-off shotgun is sufficient to establish constructive possession. Although neither defendant nor the State cite any North Carolina appellate decision directly on point, and we have found none, it is a well-established principle of the law of possession in other jurisdictions that constructive possession may be established by evidence showing the defendant's ownership of the contraband. *See, e.g., United States v. Armstrong*, 187 F.3d 392, 396 (4th Cir. 1999) ("A person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself or over the premises or vehicle in which it was concealed."); *United States v. Hiebert*, 30 F.3d 1005, 1008 (8th Cir.) ("An individual constructively possesses a firearm if he owns it or has control or dominion over it."), *cert. denied*, 513 U.S. 1029, 130 L. Ed. 2d 516 (1994); *State v. Parfait*, 693 So.2d 1232, 1243 (La. Ct. App. 1997) ("In order for a person to constructively possess a drug, he must either own it or have dominion or control over it.").

At trial, defendant's cousin Rickey Hailey testified that defendant owned a "blue shotgun" and that he was with defendant when he purchased it from an "Indian guy" nicknamed "R2." Defendant's other cousin Maurice Jones similarly testified that defendant owned a "blue" shotgun that was "[m]aybe a foot long." Defendant's friend Kerry Braithwaite, when asked at trial to identify the "blue-in-color" shotgun found in the backseat of his car, responded: "That's Rashamell's sawed-off shotgun." This evidence is sufficient to support a reasonable inference that defendant owned, and, accordingly, constructively possessed, the blue sawed-off shotgun. The trial court, therefore, properly denied defendant's motion to dismiss the charge of possession of a weapon of mass death and destruction.

II

[2] In his second argument, defendant challenges the trial court's jurisdiction to enter judgment on the conspiracy conviction, arguing that the indictment was facially invalid. "North Carolina law has long provided that '[t]here can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. In the absence of an accusation the court acquires no jurisdiction whatever, and if it assumes jurisdiction a trial and conviction are a nullity.' " *State v.*

*Neville*, 108 N.C. App. 330, 332, 423 S.E.2d 496, 497 (1992) (quoting *McClure v. State*, 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966)). As a "[p]rerequisite to its validity, an indictment must allege every essential element of the criminal offense it purports to charge." *State v. Courtney*, 248 N.C. 447, 451, 103 S.E.2d 861, 864 (1958); accord *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998) (explaining that an indictment is fatally defective "if it wholly fails to charge some offense . . . or fails to state some essential and necessary element of the offense of which the defendant is found guilty" (citation and internal quotation marks omitted)). Because a challenge to the facial validity of an indictment implicates the trial court's subject-matter jurisdiction to adjudicate the charge, an appellate court "review[s] the sufficiency of an indictment *de novo*." *State v. McKoy*, 196 N.C. App. 650, 652, 675 S.E.2d 406, 409 (2009).

The State's indictment attempts to charge defendant with conspiracy to commit robbery with a dangerous weapon. "A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means." *State v. Bindyke*, 288 N.C. 608, 615, 220 S.E.2d 521, 526 (1975). The "essence," *State v. Medlin*, 86 N.C. App. 114, 121, 357 S.E.2d 174, 178 (1987), or "gist of the crime of conspiracy is the agreement itself[,]" *State v. Rozier*, 69 N.C. App. 38, 52, 316 S.E.2d 893, 902 (1984).

Here, the indictment charging defendant with conspiracy to commit robbery with a dangerous weapon reads in pertinent part:

AND THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 26th day of June, 2008, in the county named above the defendant named above unlawfully, willfully and feloniously did with Jevaris Charan McArn, Kerry Kurtis Braithwaite, and Jonathan Wilson Jackson to commit the felony of Robbery With a Dangerous Weapon, in violation of North Carolina General Statutes Section .14-87, against Luis Alberto Reyes-Perez. This act was in violation of North Carolina Common Law and North Carolina General Statutes 14-2.4.

As defendant points out, the State failed to include any "operative language" between the words "did" and "with" denoting a conspiracy or agreement. Thus, defendant maintains, because the indictment does not allege that he "agreed with or conspired with any other person" to commit the underlying offense, the indictment is "fatally defective" and the trial court lacked jurisdiction to enter judgment on the charge.

With respect to the sufficiency of a conspiracy indictment's allegation of the requisite agreement between the defendant and another person, a leading national treatise explains:

> The agreement to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means must be alleged in a conspiracy indictment.

> The agreement, combination, or common purpose must be charged in appropriate language. A distinct and direct averment of this fact is necessary. An indictment which charges an agreement or combination by inference or implication only is defective.

15A C.J.S. *Conspiracy* § 147 (2011); *see also* 16 Am. Jur. 2d *Conspiracy* § 33 (2011) ("An indictment charging that a defendant conspired to commit an offense must allege that the defendant agreed with one or more persons to commit the offense. The conspiratorial agreement must be distinctly and directly alleged, inference and implication not being sufficient against a demurrer.").

It is undisputed that the indictment in this case fails to allege an essential element of the crime of conspiracy—the agreement to commit an unlawful act. *See State v. Looney*, 294 N.C. 1, 11, 240 S.E.2d 612, 618 (1978) ("[T]he reaching of an agreement is an essential element of the offense of conspiracy."); *accord State v. Aleem*, 49 N.C. App. 359, 362, 271 S.E.2d 575, 578 (1980) ("An agreement between the parties charged is an essential element of conspiracy."). Without a "distinct and direct" allegation that defendant and at least one other person "agreed" to commit the underlying armed robbery, the indictment in this case fails to allege an essential element of the crime of conspiracy. *See Hamner v. United States*, 134 F.2d 592, 595 (5th Cir. 1943) (explaining that since conspiracy's "essence lies in the agreement[,] [t]hat agreement must be distinctly and directly alleged" and "[i]nference and implication will not, on demurrer, suffice"); *United States v. Wupperman*, 215 F. 135, 136 (D.C.N.Y. 1914) (holding that "[t]he crime of 'conspiracy' is sufficiently charged if it be stated that two or more persons, naming them, *conspired (that is, agreed together) to commit some offense*" (emphasis added)). While "the verb 'conspire' is certainly the most appropriate to charge a conspiracy[,]" the use of other verbs, such as "combine," "confederate," or "agree," are sufficient to denote the requisite meeting of the minds between the defendant and another person. *Wright v. United States*, 108 F. 805, 810 (5th Cir. 1901). Nonetheless, "the charge must be so stated as to show that a crime has been committed . . . ." *State v. Green*, 151 N.C. 729, 729, 66 S.E. 564, 565 (1909).

STATE v. BILLINGER

[213 N.C. App. 249 (2011)]

The State nevertheless argues that the indictment's caption, which identifies the charge as "Conspiracy to Commit Robbery with a Dangerous Weapon," and the indictment's reference to the offense being committed in violation of N.C. Gen. Stat. § 14-2.4 (2009), which governs "[p]unishment for conspiracy to commit a felony," are sufficient to provide adequate notice to defendant and the trial court of the offense with which defendant was being charged. With respect to the caption, our Supreme Court has held that "[t]he caption of an indictment . . . is not a part of it and the designation therein of the offense sought to be charged can neither enlarge nor diminish the offense charged in the body of the instrument." *State v. Bennett*, 271 N.C. 423, 425, 156 S.E.2d 725, 726 (1967) (per curiam). And as for the indictment's reference to N.C. Gen. Stat. § 14-2.4, it is well established that " '[m]erely charging in general terms a breach of [a] statute and referring to it in the indictment is not sufficient' " to cure the failure to charge "the essentials of the offense" in a plain, intelligible, and explicit manner. *State v. Sossamon*, 259 N.C. 374, 376, 130 S.E.2d 638, 639 (1963) (quoting *State v. Ballangee*, 191 N.C. 700, 702, 132 S.E. 795, 795 (1926)). Accordingly, the State's failure to allege an essential element of the crime of conspiracy renders the indictment in this case facially defective and deprived the trial court of jurisdiction to adjudicate the charge. Defendant's conviction on this charge—08 CRS 51487—is vacated.[2]

III

**[3]** Defendant's final argument on appeal is that the trial court erred in ordering him to pay restitution in connection with his conviction for possessing a weapon of mass death and destruction. It is well established that " 'for an order of restitution to be valid, it must be related to the criminal act for which defendant was convicted, else the provision may run afoul of the constitutional provision prohibiting imprisonment for debt.' " *State v. Valladares*, 182 N.C. App. 525, 526, 642 S.E.2d 489, 491 (2007) (quoting *State v. Froneberger*, 81 N.C. App. 398, 404, 344 S.E.2d 344, 348 (1986)); N.C. Gen. Stat. § 15A-1343(d) (2009). In its brief, the State concedes that "the restitution ordered by the trial court had no factual connection with [defendant's] conviction for possession of a weapon of mass destruction," but argues that "the transcript indicates that the restitution charge was meant to be associated with the criminal conspiracy charge." Due to this "clerical

---

2. We note that our holding does not preclude the State from re-indicting defendant for conspiracy to commit robbery with a dangerous weapon. *State v. Ingram*, 20 N.C. App. 464, 466, 201 S.E.2d 532, 534 (1974).

error," the State urges this Court to remand the case for resentencing so that the trial court may award the restitution in connection with defendant's conspiracy conviction. As we have vacated defendant's conspiracy conviction due to the trial court's lack of jurisdiction, there is no conspiracy conviction to which the restitution order may be attached. Consequently, we must also vacate the restitution award in this case: 08 CRS 51492.

No error in part; vacated in part.

Judges BRYANT and McCULLOUGH concur.