An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA12-1476
NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

v.                                    Edgecombe County
                                      Nos. 10 CRS 2944
TRAVIS RICKS,                              10 CRS 2945
        Defendant.


Appeal by defendant from judgments entered 13 June 2012 by Judge Milton F. Fitch, Jr. in Edgecombe County Superior Court. Heard in the Court of Appeals 9 May 2013.

>   *Attorney General Roy Cooper, by Assistant Attorney General Kimberley A. D'Arruda, for the State.*

>   *Anna S. Lucas for defendant-appellant.*


GEER, Judge.

Defendant Travis Ricks appeals from his convictions of first degree burglary, possession of a stolen firearm, and attempted robbery with a dangerous weapon. He primarily contends on appeal that the indictment for possession of a stolen firearm was insufficient to confer subject matter jurisdiction on the trial court because it did not allege that

defendant knew or had reason to know that the firearm was stolen. However, the indictment's allegation that defendant "willfully" possessed the stolen firearm was sufficient to allege the element of knowledge and, therefore, the indictment was adequate to vest jurisdiction in the trial court.

## Facts

The State's evidence tended to show the following facts. George Bryant shared a home with his grandson, his stepson (Elliot Sharpe), his niece, and a family friend named Timmy Jenkins. On 17 May 2010, Mr. Bryant, his grandson, and his niece were asleep in the living room. Mr. Sharpe was asleep in an upstairs bedroom, and Mr. Jenkins was asleep in a bedroom in the back of the house. At around 3:00 a.m., Mr. Bryant and his niece were awakened by the sound of the front door of the house being kicked down.

Mr. Bryant looked up to see two men, both wearing masks, enter the house with guns. The taller of the two men had dreadlocks and was carrying a shotgun or rifle. The taller man told Mr. Bryant and his niece not to move and asked Mr. Bryant where the money was. When Mr. Bryant responded that he did not know anything about any money, the taller man told him to lie still. While the taller man held Mr. Bryant, his niece, and his

grandson at gunpoint in the living room, the second intruder went toward the back of the house.

Mr. Jenkins was awakened when the second intruder kicked in the door of the back room where he had been asleep. The man struck Mr. Jenkins on the head with a handgun or small shotgun and demanded money. When Mr. Jenkins denied knowing of any money, the man struck him again on the head and dragged him into the living room beside Mr. Bryant. Mr. Jenkins noticed that the taller intruder, who was still in the living room, had dreadlocks.

Sometime during these events, Mr. Sharpe woke up, realized that something was wrong, and called the police. After about 35 minutes, the taller intruder said the police were coming. The shorter intruder ran out the back door, while the taller man ran toward the back of the house.

Officer J.A. Palmer of the Rocky Mount Police Department responded to Mr. Sharpe's call to the police. When Officer Palmer arrived at the house, he saw a black male running from the back of the house. The officer did not pursue the suspect because he understood there were two suspects. He instead waited at the back door of the house for another officer to arrive. When Officer F.A. Adamson of the Rocky Mount Police Department arrived, the two officers entered the house, followed

by Officer Brent Lawton, also of the Rocky Mount Police Department.

The officers found Mr. Bryant, his niece, and Mr. Jenkins lying face down on the living room floor. After being told that someone else was in the back of the house, Officers Lawton and Adamson proceeded down the back hallway of the house. Officer Lawton found defendant sitting on a couch watching television in a back bedroom of the house. Officer Lawton patted down defendant and took him to the living room.

Officer Palmer then searched defendant and found a digital camera. After Mr. Bryant identified the camera as coming from the residence, Officer Palmer returned the camera to Mr. Bryant. At the scene, defendant identified himself as Jarvis Battle, and officers found in defendant's car a social security card and a driver's license bearing defendant's photograph both in the name of Jarvis Battle.

After defendant was taken to the police station, an officer searched Mr. Bryant's house for the weapon used by defendant. The officer found an AR-15 rifle underneath the covers of the bed in the bedroom in the back of the house. A search of the rifle's serial numbers in the National Crime Information Center database, which tracks stolen firearms, indicated that the rifle

had been stolen from 151 Blackwell Court in Rocky Mount, North Carolina.

At the police station, defendant, after being given his *Miranda* warnings, admitted that he and Jermaine Pittman had planned to break into the house to steal marijuana. Because defendant was the larger of the two men, he had kicked in the door. However, defendant denied having a gun during the robbery. Defendant ultimately refused to write out his statement.

Defendant was indicted for one count of first degree burglary, two counts of possession of a stolen firearm, robbery with a dangerous weapon, and assault by pointing a gun. Before trial, the State withdrew the indictment for one count of possession of a stolen firearm. At trial, the State presented the testimony of James Hancock, who identified the rifle found at the scene as belonging to him. He also testified that he owned a high capacity clip that had been recovered at the same time as the rifle. Mr. Hancock and Corporal Trevor Taylor of the Rocky Mount Police Department confirmed that the rifle had been stolen on 11 May 2010 when an unknown person kicked in the back door of Mr. Hancock's home.

The jury found defendant guilty of first degree burglary, possession of a stolen firearm, and attempted robbery with a

dangerous weapon. The jury found defendant not guilty of assault by pointing a gun. The trial court sentenced defendant to a presumptive-range term of 84 to 110 months imprisonment for the first degree burglary charge, a consecutive presumptive-range term of 84 to 110 months imprisonment for the attempted robbery with a dangerous weapon charge, and a consecutive presumptive-range term of 10 to 12 months imprisonment for the possession of a stolen firearm charge. Defendant timely appealed to this Court.

I

Defendant first contends that the trial court lacked subject matter jurisdiction over the charge of possession of a stolen firearm because the indictment did not allege that defendant knew or had reason to know that the AR-15 rifle was stolen. "[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time, even if it was not contested in the trial court." *State v. Wallace*, 351 N.C. 481, 503, 528 S.E.2d 326, 341 (2000). "On appeal, we review the sufficiency of an indictment *de novo*." *State v. McKoy*, 196 N.C. App. 650, 652, 675 S.E.2d 406, 409 (2009), *cert. denied*, 336 N.C. 405, 735 S.E.2d 329 (2012).

The indictment charging defendant with possession of a stolen firearm, in violation of N.C. Gen. Stat. § 14-71.1 (2013), read:

> The jurors for the State upon their oath present that on or about the date of offense shown and in the county and state named above, the defendant named above, unlawfully, willfully, and feloniously did possess one Rock River AR-15 rifle, the personal property of James Hancock, which property was stolen property in that it was a Rock River AR-15 rifle. This act was in violation of the above referenced statute.

This Court has held that "[a]s a '[p]rerequisite to its validity, an indictment must allege every essential element of the criminal offense it purports to charge,'" *State v. Billinger*, 213 N.C. App. 249, 255, 714 S.E.2d 201, 206 (2011) (quoting *State v. Courtney*, 248 N.C. 447, 451, 103 S.E.2d 861, 864 (1958)), although it "need only allege the ultimate facts constituting each element of the criminal offense," *State v. Rambert*, 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995). "Our courts have recognized that while an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form." *In re S.R.S.*, 180 N.C. App. 151, 153, 636 S.E.2d 277, 280 (2006). "The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally

or substantially, *or in equivalent words*." *State v. Greer*, 238 N.C. 325, 328, 77 S.E.2d 917, 920 (1953) (emphasis added).

"For a defendant to be found guilty of possession of a stolen firearm, the State must present substantial evidence that (1) the defendant was in possession of a firearm; (2) which had been stolen; (3) the defendant knew or had reasonable grounds to believe the property was stolen; and (4) the defendant possessed the pistol with a dishonest purpose." *State v. Brown*, 182 N.C. App. 277, 281, 641 S.E.2d 850, 853 (2007). Defendant argues that the indictment did not sufficiently allege the third element: that defendant knew or had reason to know the AR-15 was stolen.

While the indictment in this case did not specifically allege defendant's knowledge, our courts have held that the term "willfully," in the criminal context, "implies that the act is done knowingly and of stubborn purpose." *State v. Falkner*, 182 N.C. 793, 798, 108 S.E. 756, 758 (1921). For example, in *State v. Harris*, ___ N.C. App. ___, ___, 724 S.E.2d 633, 636 (2012), the charged criminal offense required that the defendant, a sex offender, have "'knowingly'" entered the grounds of an elementary school. This Court held that "[a]lthough the indictment did not explicitly track the relevant statutory language by alleging that Defendant was 'knowingly' on the

school's premises, the fact that the indictment stated that Defendant acted 'willfully,' sufficed to allege the requisite 'knowing' conduct." *Id.* at ___, 724 S.E.2d at 637-38.

Here, the indictment alleged that defendant "unlawfully, willfully, and feloniously" possessed the stolen rifle. This allegation of willfulness was sufficient under *Falkner* and *Harris* to allege the knowledge element of the offense of possession of a stolen firearm.

## II

Defendant next contends that the trial court erred in denying his motion to dismiss the charge of possession of a stolen firearm because there was insufficient evidence that defendant knew or had reason to know that the AR-15 rifle was stolen. "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

"'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918

(1993)).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).  "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."  *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

While the State did not present direct evidence of defendant's knowledge that the rifle was stolen, this Court has noted that a "[d]efendant's guilty knowledge can be implied from the circumstances."  *State v. Wilson*, 106 N.C. App. 342, 347, 416 S.E.2d 603, 606 (1992).  In *Wilson*, this Court held that there was sufficient evidence of guilty knowledge when a stolen handgun, which had been used in several robberies, was thrown from a car while the suspects were fleeing the police.  *Id.* at 347-48, 416 S.E.2d at 606.

Similarly, in *State v. Taylor*, 64 N.C. App. 165, 166, 169, 307 S.E.2d 173, 174, 176 (1983), *aff'd in part and rev'd in part on other grounds*, 311 N.C. 380, 317 S.E.2d 369 (1984), when the defendant, who was suspected of intending to rob a store, walked into an alley, a person keeping him under surveillance yelled at

him. At that point, the defendant stooped down next to a parked car, removed a pistol from his coat, and "surreptitiously hid[] or dispose[d] of" the pistol by throwing it into nearby bushes. *Id.* This Court concluded that "[t]hese circumstances, viewed in the light most favorable to the State, are sufficiently incriminating to permit a reasonable inference that defendant knew or must have known that the firearm was stolen, and thus sufficient to support a finding to that effect by the jury." *Id.* at 169, 307 S.E.2d at 176.

The key to these decisions is that the defendant was trying to dispose of the weapon, separate and apart from trying to avoid arrest for another crime. The facts suggested a consciousness of guilt relating to the gun specifically. *See* *State v. Wilson*, 203 N.C. App. 547, 554, 691 S.E.2d 734, 740 (2010) ("These cases establish the rule that guilty knowledge can be inferred from defendant's throwing away the stolen weapon, despite an intervening crime committed by defendant with the weapon.").

Here, defendant used the rifle to threaten the occupants of the house during the robbery. When he became aware that the police were coming, defendant ran to the back of the house where he hid the rifle under the covers of a bed. He then sat on a couch, away from the bed, pretending to watch television. When

defendant was interrogated, defendant admitted to kicking in the house's door in order to commit a robbery, but he denied having a rifle. This evidence is sufficient to allow a jury to conclude that defendant was trying to hide his possession of the rifle. It, therefore, constitutes incriminating evidence showing a consciousness of guilt that permits a finding that defendant knew the rifle was stolen.

In arguing that the motion to dismiss should have been granted, defendant points to *Wilson*, *Brown*, and *State v. Allen*, 79 N.C. App. 280, 339 S.E.2d 76, *aff'd per curiam*, 317 N.C. 329, 344 S.E.2d 789 (1986). None of those cases, however, involved incriminating evidence showing a consciousness of guilt. *See* *Wilson*, 203 N.C. App. at 555, 691 S.E.2d at 740 (reversing denial of motion to dismiss charge of possession of stolen firearm when no evidence that defendant knew where gun came from and defendant's codefendant, following a robbery, took gun to hide it in codefendant's mother's house); *Brown*, 182 N.C. App. at 278-80, 282, 641 S.E.2d at 851-52, 853 (reversing denial of motion to dismiss charge of possession of stolen firearm when State's evidence was that officers found stolen gun in bag of guns in bedroom closet of woman they had pursued after observing drug deal; woman testified that bag belonged to defendant and that he made up story about finding bag; and State presented no

evidence that defendant tried to disassociate himself from possession of bag); *Allen*, 79 N.C. App. at 285, 339 S.E.2d at 79 (reversing denial of motion to dismiss charge of possession of stolen goods based on officers finding stolen VCRs in defendant's trunk when "defendant exhibited no such incriminating behavior when [officer] stopped his car," but rather "defendant freely submitted to a thorough search of the passenger compartment and the trunk").

The cases cited by defendant are not controlling when, as here, the State did present incriminating evidence that defendant tried to abandon the gun and persuade the officers that he did not have a gun even though he admitted breaking and entering the house. The trial court, therefore, properly denied the motion to dismiss.

III

Defendant next argues that the State did not properly amend the indictment for robbery with a dangerous weapon. Defendant notes that the trial court orally allowed the State's motion to amend, but that the amendment was never set out in writing.

The original indictment read:

> The jurors for the State upon their oath present that on or about the date of offense shown, and in the county and state named above, the defendant named above unlawfully, willfully and feloniously did steal, take, and carry away another's

personal property, *one camera of the value of $250.00, from the person and presence of George Henry Bryant.* The defendant committed this act by means of an assault consisting of having in his possession and threatening the use of a firearm to wit, a Rock River AR-15 rifle whereby the life of George Henry Bryant was threatened and endangered. This act was in violation of [N.C. Gen. Stat. 14-87 (2013)].

(Emphasis added.) The indictment thus alleged that defendant robbed Mr. Bryant of a camera.

At trial, the State moved to amend the indictment to allege "attempted robbery with a dangerous weapon and to reallege the particular property to [be] U.S. currency as opposed to [a] digital camera." The trial court allowed the State's proposed amendments, but the State never prepared a written amended indictment. Defendant argues that because the oral order was ineffective to actually amend the indictment, the trial court should have allowed his motion to dismiss the robbery with a dangerous weapon charge because the State failed to present evidence that he robbed Mr. Bryant of a camera.

Even assuming, without deciding, that the oral indictment was not effective, the evidence presented by the State as to the allegations in the original indictment was sufficient to survive a motion to dismiss. Our Supreme Court has held that "armed robbery is: '(1) the unlawful taking or an attempt to take personal property from the person or in the presence of another

(2) by use or threatened use of a firearm or other dangerous weapon (3) whereby the life of a person is endangered or threatened.'" *State v. Hope*, 317 N.C. 302, 305, 345 S.E.2d 361, 363 (1986) (quoting *State v. Beaty*, 306 N.C. 491, 496, 293 S.E.2d 760, 764 (1982), *overruled on other grounds by State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988)).

The only issue is whether the State presented evidence that defendant unlawfully took or attempted to take a camera from Mr. Bryant. While Mr. Bryant testified that he did not recall anything being stolen from his house, Officer Palmer testified that he recovered a camera from defendant's person when the officer searched defendant. Mr. Bryant indicated that the camera belonged to him, and Officer Palmer then returned the camera to Mr. Bryant consistent with his department's practice when stolen property was recovered at the scene of the robbery.

This evidence was sufficient to support the charge of armed robbery of a camera. *See State v. Patterson*, 182 N.C. App. 102, 106-07, 641 S.E.2d 376, 379-80 (2007) (finding sufficient evidence of armed robbery when defendant threatened victim with gun, took her purse, and then quickly returned purse); *State v. Bellamy*, 159 N.C. App. 143, 145, 148-49, 582 S.E.2d 663, 665-66, 667-68 (2003) (holding evidence sufficient to prove armed robbery when defendant grabbed videos, fled, and, during chase,

threatened victim with knife, but officers shortly thereafter stopped defendant and recovered videos). Defendant has, therefore, failed to demonstrate any prejudice from the lack of a written amendment to the indictment.

No error.

Judges ELMORE and DILLON concur.

Report per Rule 30(e).