STATE OF NORTH CAROLINA v. JASON TIMOTHY GETTYS

No. COA11-810

(Filed 21 February 2012)

**1. Evidence—testimony—substantially similar evidence already presented**

The trial court did not err in a first-degree murder case by overruling defendant's objection to his girlfriend's testimony that she did not press defendant for information on what happened on the pertinent night because she did not want to anger him or get beaten. There was substantially similar evidence presented at trial that was unchallenged on appeal. Further, there was no probability that the jury would have reached a different outcome in light of the other evidence presented at trial.

**2. Homicide—first-degree murder—felony murder rule— robbery with dangerous weapon**

The trial court did not err by refusing to dismiss the first-degree murder charge under the felony murder rule. The evidence viewed in the light most favorable to the State revealed that there was substantial evidence of each element of robbery with a dangerous weapon and that defendant was the perpetrator.

**3. Homicide—first-degree murder—failure to instruct on lesser-included offense of voluntary manslaughter**

The trial court did not err in a first-degree murder case by refusing to instruct the jury on the lesser-included offense of voluntary manslaughter. Defendant was not prejudiced because the jury had the option of convicting him of second-degree murder.

**4. Jury—divided jury—Allen instruction—pattern jury instructions**

The trial court did not err or commit plain error in a first-degree murder case by giving an *Allen* charge to the divided jury. The pattern jury instructions fairly apprised the jurors of their

duty to reach a consensus after open-minded debate and examination without sacrificing their individually held convictions merely for the sake of returning a verdict.

Appeal by defendant from judgment entered 13 December 2010 by Judge Beverly T. Beal in Burke County Superior Court. Heard in the Court of Appeals 13 December 2011.

*Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

*Parish & Cooke, by James R. Parrish for defendant-appellant.*

STEELMAN, Judge.

Defendant failed to establish that it was plain error to admit his girlfriend's statement that she was scared he would beat her. The trial court did not err in submitting the charge of felony first-degree murder to the jury because there was sufficient evidence of the underlying robbery. Defendant was not prejudiced by the trial court's refusal to instruct on the lesser included offense of voluntary manslaughter because the trial court submitted the charge of second-degree murder to the jury. Defendant failed to establish that it was plain error to give the pattern jury instructions *Allen* charge after the trial court inquired into the numerical split of the jury.

## I. Background

Late on the evening of 29 December 2006, James Timothy Gettys ("defendant") returned home. He gave Donna Baker, his girlfriend, some cash, suggesting it was from the paycheck he received and cashed that day. He then told Baker, "I think I killed somebody." He also related that he had hit a man with a rock several times. Defendant contacted the Morganton police and arranged a meeting. Just before midnight, defendant met with Officer James Coward at a gas station. Defendant informed Officer Coward that he thought he might have killed someone during a narcotics dispute. He told Officer Coward where the altercation occurred, and they traveled to that location.

The Morganton police found the body of Steven Drew Snoddy face down in a ditch. A wrecked pickup truck was also at the scene. A chain was attached to Snoddy's trousers that had been connected to his wallet, but his wallet was not there when the police discovered his body. Snoddy's trousers were slightly pulled down.

On 1 February 2007, defendant was indicted for murder. Defendant's trial began on 29 November 2010. The State proceeded under two theories of first-degree murder: (1) premeditation and deliberation and (2) felony murder based upon a robbery. At the close of evidence, the trial court submitted four options to the jury: premeditated and deliberate first-degree murder, first-degree felony murder, second-degree murder, and not guilty. The trial court refused to instruct the jury on voluntary manslaughter as a lesser included offense of first-degree murder.

The evidence presented at trial tended to show that defendant and Snoddy were involved in a physical altercation on the side of the road. Defendant testified at trial that, in the course of the fight, he struck Snoddy three or four times in the head with a rock. He claimed that he had no plans to harm Snoddy before they got into the altercation. He also denied taking Snoddy's wallet. The jury found defendant guilty of first-degree murder under the felony murder rule but not guilty of premeditated and deliberate first-degree murder. Defendant was sentenced to life imprisonment without the possibility of parole.

Defendant appeals.

## II. Baker's Testimony

**[1]** In his first argument, defendant contends that the trial court erred in overruling his objection to Baker's testimony that she did not press defendant for information on what happened that night because she did not want "to get him pissed off and beat [her] ass." We disagree.

## A. Standard of Review

Defense counsel objected after Baker testified that she was afraid defendant would beat her, but counsel did not move to strike the testimony. Defense counsel did not provide a specific basis for the objection. Once a witness responds to a question, any objection to that response is waived absent a motion to strike. *See State v. Burgin*, 313 N.C. 404, 409, 329 S.E.2d 653, 657 (1985). ("The one objection made was lodged after the witness responded to the question. Defendant made no motion to strike the answer, and therefore waived the objection."). Furthermore, an appellant may not argue error on appeal if his "underlying objection fails to present the nature of the alleged error to the trial court." *State v. Catoe*, 78 N.C. App. 167, 168, 336 S.E.2d 691, 692 (1985). Because this issue was not preserved, we only review for plain error. *State v. Wilson*, 203 N.C. App. 547, 551, 691 S.E.2d 734, 738 (2010).

Under the plain error standard of review, defendant has the burden of showing: (i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.

*Id.* (citations omitted) (internal quotation marks omitted).

### B.  Analysis

After the altercation between defendant and Snoddy, defendant went to Baker's residence. He was living with her at the time. He gave Baker $298 in cash. Defendant had received his paycheck that day, and it appears that it was the couple's expectation that defendant give some or all of his paycheck to Baker. Baker was disturbed by defendant's demeanor and conduct. She testified that defendant's shirt was dirty "and he was pale as a ghost." Baker testified, "[I]t was a little odd because he had worked overtime . . . [the] Saturday before so it should have showed up on the check . . . ." She then explained, "I wasn't going to push the issue about the money or anything because I didn't want him to get pissed off and beat my ass . . . ." Later in the trial, Detective Calvin Daniels recounted his interview of Baker. He testified, "She stated that she didn't want to push the issue because she didn't want him to get pissed off and fight with her." Our review of the transcript indicates Detective Daniel's description of Baker's statement differed from the language employed by Baker at trial because the prosecutor asked the detective not to use Baker's "literal language." Defendant did not object to this testimony or move to strike it.

Defendant contends that Baker's statement at trial was irrelevant, that the danger of unfair prejudice substantially outweighed the statement's probative value, and that the statement was inadmissible character evidence. *See generally* N.C. Gen. Stat. § 8C-1, Rules 401 to 404 (2011). Assuming *arguendo* that the admission of this evidence was in error, we conclude that the alleged error does meet the high burden for plain error. There was other evidence suggesting Baker believed defendant would assault her if she questioned him concerning the money—namely, Detective Daniel's testimony, which defendant does not challenge on appeal. Therefore, there was evidence that is unchallenged on appeal that is substantially similar to Baker's statement. Moreover, in light of the other evidence presented at trial, including defendant's admission that he struck Snoddy several times in the head with a rock, it is not probable that the jury would have

arrived at a different outcome in this case but for the admission of Baker's statement. *See Wilson*, 203 N.C. App. at 551, 691 S.E.2d at 738 (stating standard for plain error); *see also State v. Towe*, ___ N.C. App. ___, ___, 707 S.E.2d 770, 774 ("We must determine whether, absent the alleged error, the 'jury probably would have returned a different verdict.' " (quoting *State v. Davis*, 321 N.C. 52, 59, 361 S.E.2d 724, 728 (1987))), *disc. review allowed*, 365 N.C. 202, 709 S.E.2d 599 (2011).

This argument is without merit.

### III.  Motion to Dismiss

**[2]** In his second argument, defendant contends that the trial court erred in refusing to dismiss the first-degree murder charge under the felony murder rule because there was insufficient evidence that defendant robbed Snoddy. We disagree.

### A.  Standard of Review

We review the denial of a motion to dismiss *de novo*, analyzing the defendant's argument under the same framework employed by the trial court. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

> When a defendant moves for dismissal, the trial court must determine whether there is substantial evidence of each essential element of the offense charged (or of a lesser offense included therein), and of the defendant being the one who committed the crime. If that evidence is present, the motion to dismiss is properly denied. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.
>
> In ruling on a motion to dismiss, the evidence must be considered by the court in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from the evidence. Contradictions and discrepancies must be resolved in favor of the State, and the defendant's evidence, unless favorable to the State, is not to be taken into consideration. The test of the sufficiency of the evidence on a motion to dismiss is the same whether the evidence is direct, circumstantial, or both. All evidence actually admitted, both competent and incompetent, which is favorable to the State must be considered.

*State v. Bullard*, 312 N.C. 129, 160, 322 S.E.2d 370, 387–88 (1984) (citations omitted) (internal quotation marks omitted).

### B. Analysis

Under the felony murder rule, first-degree murder includes a killing that is "committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon." N.C. Gen. Stat. § 14-17 (2011). In this case, it was the State's theory that defendant killed Snoddy while robbing him with a dangerous weapon. The elements of robbery with a dangerous weapon are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). Evidence tending to show that the defendant took the victim's property immediately after killing him is sufficient to allow the jury to conclude the killing occurred during the commission of a robbery. *State v. Wooten*, 295 N.C. 378, 386, 245 S.E.2d 699, 704 (1978). Defendant concedes that the State presented substantial evidence that defendant killed Snoddy but contends there was not substantial evidence that the killing occurred in the course of an alleged robbery.

Defendant and Snoddy were co-workers at Environmental Inks. They were friends and had used cocaine and marijuana together on several occasions. The day of the altercation was payday at Environmental Inks. Lewis Lincoln, who shared a cell in the Burke County Jail with defendant in 2007, testified at trial concerning conversations that he had with defendant. Lincoln testified that defendant stated that on the day of the altercation, he had used the money from his paycheck to purchase drugs.

Joshua White was socializing with Snoddy at Snoddy's residence on the night of the altercation. White testified that defendant, who was "pale and jittery," approached the house on foot. Defendant asked Snoddy if he could borrow $50. When Snoddy replied that he did not have the money, defendant requested a ride, and Snoddy agreed. White also testified that there was a chain hanging from Snoddy's pants pocket as if it was connected to a wallet. Snoddy and defendant left in a Dodge pickup truck; Snoddy was driving.

Michael Longpre, a retired Morganton police officer at the time of trial, led the investigation of Snoddy's death. Longpre testified that

Snoddy had cashed his paycheck after work and that Snoddy's wallet was not discovered at his residence. Snoddy's paycheck was in the amount of "$290 and . . . 70-something cents."

Special Agent Charles Morris, of the State Bureau of Investigation, testified that when Snoddy's body was discovered, the wallet-chain was still attached to his trousers, but the wallet was gone, and his trousers were partially pulled down over his buttocks. The clasp that had connected the chain to the wallet was bent.

Baker testified that on the night defendant returned home after the altercation, he gave her $298 and his pay stub before he told her that he thought he killed someone. According to Baker, she and defendant had previously had arguments over money because defendant never brought home any money to "help" Baker.

When considered in the light most favorable to the State, this evidence tends to show that defendant spent his paycheck on drugs and that defendant felt he needed to give Baker money. In light of defendant's admission that he bludgeoned Snoddy to death with a rock, there was substantial evidence from which the jury could conclude that (1) defendant struck Snoddy with the rock in order to take the wallet so he could give Baker some money when he returned home and (2) that the killing and the taking occurred as part of a continuous transaction. *Cf. State v. Barden*, 356 N.C. 316, 351–53, 572 S.E.2d 108, 131–32 (2002) (concluding the act of striking the victim in the head and then removing the victim's wallet was a continuous transaction for the purpose of armed robbery). Defendant does not argue that the rock was not a dangerous weapon. *See generally State v. Marshall*, 188 N.C. App. 744, 749, 656 S.E.2d 709, 713 (2008) ("A dangerous or deadly weapon is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm." (quoting *State v. Wiggins*, 78 N.C. App. 405, 406, 337 S.E.2d 198, 199 (1985)) (internal quotation marks omitted)).

Defendant argues that he testified that, on the day of the altercation, he also had $250 that his mother had given him for Christmas. But "the defendant's evidence, unless favorable to the State, is not to be taken into consideration" for the purpose of a motion to dismiss. *Bullard*, 312 N.C. at 160, 322 S.E.2d at 388. Defendant also points out that Lewis did not testify that defendant told Lewis that he (defendant) struck Snoddy in order to rob him. Rather, Lincoln testified that defendant claimed to have struck Snoddy after being attacked.

However, when all of the evidence is viewed in the light most favorable to the State, the trial court correctly held that the State presented substantial evidence of each element of robbery with a dangerous weapon and that defendant was the perpetrator.

This argument is without merit.

### IV.  Lesser Included Offense

**[3]** In defendant's third argument, he contends that the trial court erred in refusing to instruct the jury on the lesser included offense of voluntary manslaughter. We disagree.

### A.  Standard of Review

A trial court's decision not to give a requested lesser included offense instruction is reviewed *de novo* on appeal. *State v. Debiase*, ___ N.C. App. ___, ___, 711 S.E.2d 436, 441 *disc. review denied*, ___ N.C. ___, 717 S.E.2d 399 (2011).

### B.  Analysis

Defendant's argument is foreclosed by the Supreme Court's decision in *State v. Price*, 344 N.C. 583, 476 S.E.2d 317 (1996). Defendant was convicted of first-degree felony murder after the trial court instructed the jury it could find defendant (1) guilty of premeditated and deliberate first-degree murder; (2) guilty of first-degree felony murder; (3) guilty of second-degree murder; or (4) not guilty. The defendant in *Price* was also convicted of first-degree murder under the felony murder rule after the same four options were submitted to the jury. *Id.* at 590, 476 S.E.2d at 321. The defendant in *Price* argued on appeal that the trial court erred in failing to submit the charge of voluntary manslaughter to the jury. *Id.* at 589, 476 S.E.2d at 320. The Supreme Court held that, assuming *arguendo* that the evidence supported a charge of voluntary manslaughter, the trial court's error did not prejudice the defendant:

> [W]e conclude that the verdict of first-degree murder based on felony murder shows clearly that the jurors were not coerced, for they had the right to convict defendant of second-degree murder. That they did not indicates their certainty of his guilt of the greater offense. The failure to instruct them that they could convict of voluntary manslaughter therefore could not have harmed the defendant.

*Id.* at 592, 476 S.E.2d at 322. *See generally id.* at 589, 476 S.E.2d at 320 (providing background on the law governing lesser included offenses

and stating the general rule that "[a] defendant is entitled to have the jury consider all lesser included offenses supported by the indictment and raised by the evidence"). Under *Price,* even if there was evidence supporting the charge of voluntary manslaughter in this case, defendant was not prejudiced by the trial court's refusal to submit voluntary manslaughter to the jury because the jury had the option of convicting him of second-degree murder.

This argument is without merit.

## V. *Allen* Charge

**[4]** In defendant's fourth argument, he contends (1) that the trial court incorrectly gave supplemental instructions after inquiring into the numerical division of the jury and (2) that the trial court's supplemental jury instructions did not comport with N.C. Gen. Stat. § 15A-1235 (2011). We disagree.

### A. Standard of Review

The decision to *give* an *Allen* charge[1] is discretionary and therefore reviewed for abuse of discretion. *State v. Fernandez,* 346 N.C. 1, 22–23, 484 S.E.2d 350, 363–44 (1997). The propriety of the trial court's *formulation* of the charge is determined by reference to N.C. Gen. Stat. § 15-1235(b). *Id.* at 22, 484 S.E.2d at 363 (citing *State v. Easterling,* 300 N.C. 594, 608, 268 S.E.2d 800, 809 (1980)). Whether the *Allen* charge provides the instructions required by N.C. Gen. Stat. § 15-1235(b) is a question of law we review *de novo. See id.* at 22–23, 484 S.E.2d at 363–64 (according no deference to the trial court's decision when determining whether an instruction "contained the substance of the statutory instructions"); *cf. Edwards v. Wall,* 142 N.C. App. 111, 115, 542 N.C. App. 258, 262 (2001) (stating that questions of statutory interpretation are reviewed *de novo*). Defendant failed to object to the trial court's *Allen* charge. He concedes he must not only establish that the trial court erred, but that the alleged errors amounted to plain error. *Wilson,* 203 N.C. App. at 551, 691 S.E.2d at 738. *See* Section II.A for the plain error standard of review.

### B. Analysis

To determine whether a defendant is entitled to a new trial as a result of the trial court's *Allen* charge, the relevant question is whether the charge was coercive.

---

1. The term "Allen charge" is derived from the case of *Allen v. United States,* in which the United States Supreme Court approved the use of jury instructions that encouraged the jury to reach a verdict, if possible, after the jury requested additional instructions from the trial court. *See* 164 U.S. 492, 501–02, 41 L. Ed. 528, 530–31 (1896).

[I]t has long been the rule in this State that in deciding whether a court's instructions force a verdict or merely serve as a catalyst for further deliberations, an appellate court must consider the circumstances under which the instructions were made and the probable impact of the instructions on the jury.

*State v. Peek*, 313 N.C. 266, 271, 328 S.E.2d 249, 253 (1985). Section 15A-1235(b) is the legislatively-approved version of the *Allen* charge. "[E]very variance from the procedures set forth in [N.C. Gen. Stat. § 15A-1235] does not require the granting of a new trial." *Id.* "Clear violations" of these safeguards generally require a finding of prejudicial error. *Id.* (quoting *Easterling*, 300 N.C. at 609, 268 S.E.2d at 809–10). In this case, defendant must establish it is probable that the jury would have reached a different outcome but for a faulty *Allen* charge (or that the alleged error otherwise resulted in a miscarriage of justice). *See supra* Section II.A.

First, we address the trial court's decision to give an *Allen* charge. During the jury's second day of deliberations, the jury sent a note to the trial judge stating that the jurors could not agree on a verdict. The trial judge inquired as to the numerical division, instructing the jury foreperson not to tell him whether the division was in favor of guilty or not guilty. The foreperson informed the judge that the jury was divided eleven to one. The trial court then gave the jury additional instructions based on N.C. Gen. Stat. § 15A-1235(b). Defense counsel stated he had no objection to these instructions. The jury found defendant guilty of first-degree felony murder almost two hours later.

"If it appears to the judge that the jury has been unable to agree, the judge *may* require the jury to continue its deliberations and *may* give or repeat the instructions provided in subsections (a) and (b)" of section 15A-1235. N.C. Gen. Stat. § 15A-1235(c) (emphasis added). The word "may" makes the instruction discretionary. *See Fernandez*, 346 N.C. at 22–23, 484 S.E.2d at 363–644.

Defendant contends the decision to give the instruction in this case was improper because the trial judge first inquired into the numerical division of the jury. However, this does not suggest that the instruction was coercive, as defendant contends. The judge informed the foreperson not to reveal whether the majority favored a guilty or not-guilty verdict. The judge made this inquiry at a logical point in deliberations: after he received a note stating that the jury was deadlocked. *Cf. State v. Yarborough*, 64 N.C. App. 500, 502-03, 307 S.E.2d 794, 795–96 (1983) (concluding there was no coercion and no error

when "the trial judge made his inquiry as to the numerical split at a natural break in the jury's deliberations, after a full morning's deliberations, and clearly stated that he did 'not want to know that so many jurors have voted in one fashion and so many in another' "). The trial court did not abuse its discretion by deciding to give an *Allen* charge, much less commit plain error.

We now turn to the substance of the *Allen* charge given by the trial court. Our Supreme Court has stated that "no 'clear violation' of the statute will be found to exist as long as the trial court gives the substance of the four instructions found in [N.C. Gen. Stat.] § 15A–1235(b)." *Fernandez*, 346 N.C. at 23, 484 S.E.2d at 364. In other words, the instructions contained in the statute are "guidelines" and need not be given verbatim. *State v. Jeffries*, 57 N.C. App. 416, 421, 291 S.E.2d 859, 862 (1982). In *Fernandez*, the Supreme Court approved instructions that deviated from the statutory language because "[t]he instructions fairly apprised the jurors of their duty to reach a consensus after open-minded debate and examination without sacrificing their individually held convictions merely for the sake of returning a verdict." 346 N.C. at 23, 484 S.E.2d at 364.

The statutory *Allen* charge, contained in N.C. Gen. Stat. § 15A-1235(b), provides as follows:

(b)  Before the jury retires for deliberation, the judge may give an instruction which informs the jury that:

(1)  Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2)  Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3)  In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4)  No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

*Id.* § 15A-1235(b).

In this case, the trial judge gave the following instruction:

> Now, members of the jury, your foreperson informs me that you have been unable to agree upon a verdict. You are reminded that it is your duty to do whatever you can to reach a verdict. You should reason the matter over together as reasonable men and women in an effort to reconcile your differences if you can without the surrender of conscientious convictions. No juror should surrender an honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

> I'm going to ask you to resume your deliberations and continue your efforts to reach a verdict. I ask you to think about the evidence again, to see what conclusions you reach from it, your analysis of it, to share that, to articulate that, and to see if you can do so—if you can reach a verdict with this guidance I just gave you.

Defendant argues that the discrepancies between the statute and the instructions given at trial amount to plain error. The relevant portion of the instructions given at trial was nearly identical to the North Carolina Pattern Jury Instructions. *See* N.C.P.I.—Crim. 101.40, Failure of Jury to Reach a Verdict (Supp. 2010).

The pattern jury instructions differ in several respects from the statute. The pattern instructions state that it is the jurors' duty to do "whatever [they] can to reach a verdict," whereas the statute states that they should "deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment." N.C. Gen. Stat. § 15A-1235(b)(1). The pattern instructions do not state that "[e]ach juror must decide the case for himself," but they do remind jurors that they should not "surrender an honest conviction as to the weight or effect of the evidence . . . for the mere purpose of returning a verdict." N.C.P.I.—Crim. 101.40.

After comparing N.C. Gen. Stat. § 15A-1235(b) to the pattern instructions, we hold that the pattern jury instructions "fairly apprised the jurors of their duty to reach a consensus after open-minded debate and examination without sacrificing their individually held convictions merely for the sake of returning a verdict," *Fernandez*, 346 N.C. at 23, 484 S.E.2d at 364, and therefore, the pattern jury instructions provide the substance of each of the guidelines

contained in the statute. The instructions given at trial contained the substance of the pattern jury instructions. In fact, they were nearly identical. Therefore, we also hold that the trial court did not err, much less commit plain error, by providing the instruction set forth above.

This argument is without merit.

## VI. Conclusion

Defendant received a fair trial, free from error.

NO ERROR.

Judges McGEE and McCULLOUGH concur.